## SOUTHERN HARDWARE JOBBERS' ASS'N et al. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Fifth Circuit. June 13, 1923.)

No. 3887.

1. **Trade-marks and trade-names and unfair competition ⬅80½, New, vol. 8A Key-No. Series—Evidence held to warrant finding of conduct which restrained competition by nonmembers of association.**

Evidence heard by the Federal Trade Commission *held* to warrant the commission in finding that a jobbers' association and its members had pursued a course of conduct in their dealing with manufacturers for the purpose of preventing the manufacturers from selling to any jobbers not qualified to be members of the jobbers' association, which hindered and obstructed the free and natural flow of commerce in interstate trade, so as to constitute an unfair method of competition, within the Federal Commission Act (Comp. St. §§ 8836a–8836k), if such conduct was in pursuance of an agreement or understanding, express or implied.

2. **Trade-marks and trade-names and unfair competition ⬅80½, New, vol. 8A Key-No. Series—Agreement may be inferred from circumstances indicating concerted action.**

An agreement between parties who were pursuing a course of conduct which interfered with the free flow of interstate commerce may be inferred from acts of the parties in such conduct which indicated a concerted plan on their part.

3. **Trade-marks and trade-names and unfair competition ⬅80½, New, vol. 8A Key-No. Series—Order to cease and desist from designated practices held not too broad.**

Where the Federal Trade Commission found that a jobbers' association and its officers and members were guilty of unfair competition in preventing manufacturers from dealing with co-operative jobbing companies, an order containing 11 paragraphs, each of which required the association to cease and desist from certain practices therein specified, *held* not too broad.

Petition to Review Order of Federal Trade Commission, Sitting at Washington, D. C.·

---

Petition by the Southern Hardware Jobbers' Association and others to review and set aside an order of the Federal Trade Commission. Petition denied.

Peter O. Knight, of Tampa, Fla. (C. Fred Thompson and A. G. Turner, both of Tampa, Fla., on the brief), for petitioners.

W. H. Fuller, Chief Counsel, of McAlester, Okl., and Adrien F. Busick and Charles Melvin Neff, both of Washington, D. C., for respondent.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The Southern Hardware Jobbers' Association, a voluntary, unincorporated association (herein called the Jobbers' Association), four business corporations, and two individuals, George E. King and John Donnan, filed their petition in this court, praying the review and setting aside of an order to cease and desist, made against them by the respondent, the Federal Trade Commission. The proceeding which resulted in that order was commenced by a complaint made against the petitioners by the respondent. That complaint contained allegations to the following effect:

The members of the Jobbers' Association, about 350 in number, are persons, partnerships, and corporations engaged in the business of buying and selling hardware in wholesale quantities throughout certain Southern states of the United States; said King being its president, said Donnan its secretary, and said business corporations being members thereof and engaged in the business of buying and selling hardware in wholesale quantities in Atlanta, Ga. They buy hardware in various states of the United States, and cause same to be transported in interstate commerce, and are fairly representative of the entire membership. Within a year prior to the filing of the complaint certain retail dealers in hardware in Georgia and adjacent states organized under the laws of Delaware a corporation called the Merchants' Co-operative Association (herein referred to as the Co-operative Association), for the purpose of purchasing in wholesale quantities through the instrumentality of that corporation all hardware and supplies dealt in by such retail dealers. The profits arising from the business of that corporation were to be distributed between its stockholders and other retailers for whom it purchased—a retailer to get the whole or a part of the profit made on each sale to it by that corporation. At the outset that corporation undertook to purchase supplies for the retailers, for whom it was to purchase through W. A. Ray Hardware Company, of Pensacola, Fla., a member of the Jobbers' Association, under an arrangement which provided for that company receiving as compensation 5 per cent. of the cost price of supplies so purchased. Another corporation, the American Purchasing Company, was organized under the laws of Delaware for the purpose of acting as purchasing agent for the Co-operative Association and other domestic and foreign purchasers.

The parties named as defendants in the complaint mentioned have conspired and confederated together with themselves and with other persons, and particularly with other members of the Jobbers' Asso-

ciation, to prevent the Co-operative Association and American Purchasing Company from obtaining from manufacturers and other usual sources from which purchasers of hardware in wholesale quantities must obtain supplies, either directly or through the assistance of said W. A. Ray Hardware Company, and have, by boycott and threats of boycott and other unlawful means, induced manufacturers and others to refuse to sell their products to the Co-operative Association and the American Purchasing Company, and such manufacturers and their brokers were informed by petitioners herein that, if they sold their products to the Co-operative Association and the American Purchasing Company, the members of the Jobbers' Association would not thereafter buy the products of such manufacturers, by means whereof manufacturers of hardware generally were intimidated to the extent that they thereafter refused to sell their products to the Co-operative Association and the American Purchasing Company. The machinery of the Jobbers' Association was employed by its officers and members in bringing about and making effective said boycott.

After petitioners herein had answered that complaint, and after the introduction of evidence and a hearing by the commission, it made its findings as to the facts and stated its conclusion. It made findings in accord with the allegations of the complaint as to the nature and composition of the Jobbers' Association, as to the relations to it of the defendant individuals and corporations, as to the nature of the business engaged in by the latter, as to the organization and purpose of the Co-operative Association and the American Purchasing Company, and as to purchases made through the W. A. Ray Hardware Company. The commission found, among other things, to the following effect:

When the complaint was filed, and when the findings were made, the Jobbers' Association comprised about 90 per cent. of all those doing a jobbing or a wholesale business in hardware in that portion of the United States bounded by the Potomac river on the north, the Rio Grande on the south, the Atlantic Ocean on the east, and the western boundary of Oklahoma on the west. About 90 per cent. of its members were and are engaged in selling hardware at retail, as well as at wholesale, and are competitors of exclusively retail dealers in hardware in the territory mentioned, including their own customers who are retailers. For a firm or corporation to be eligible to membership in the Jobbers' Association a by-law provides that its sales to merchants shall be not less than 75 per cent. of its gross sales of not less than $250,000 a year, that it has not less than three salesmen constantly on the road, and that it has capital, or capital and surplus, of not less than $75,000. The membership of the Jobbers' Association is further restricted to those wholesalers whose policy it is to distribute goods through so-called regular channels of trade; that is, from manufacturer to jobber or wholesaler, from jobber or wholesaler to retailer, and from retailer to consumer, it being contrary to that policy for a hardware manufacturer to sell direct to a retailer on the same terms and conditions that it sells like goods and quantities to so-called legitimate jobbers and wholesalers, and such policy re-

quiring that, in the case of a sale by a manufacturer to a retailer, price differentials be charged to protect the so-called legitimate jobber or wholesaler in his method of distribution.

The purpose of the Jobbers' Association and its members is to dominate the wholesale and jobbing trade in hardware in the territory mentioned, and to hinder competition in such trade arising from the operations of jobbers or wholesalers who do not conform to the plan of distribution approved by the Jobbers' Association. It is the policy of members of the Jobbers' Association to refuse to buy from hardware manufacturers who sell to customers who do not conform to the distribution policy approved by the Jobbers' Association. To promote that policy said association conducts a system of espionage upon the business of the wholesale and jobbing trade in said territory. In many instances the members and officers of the Jobbers' Association, including petitioners, have notified hardware manufacturers that named jobbers or wholesalers, including the Co-operative Association and the American Purchasing Company, do not conform to the method of distribution approved by the Jobbers' Association, whereby the manufacturers so notified are made to understand that they have the choice between getting the custom of the members of the Jobbers' Association or selling to jobbers or wholesalers who do not conform to the practice approved by the Jobbers' Association. Close relations have been and are maintained between the officers and members of the Jobbers' Association and the officers and members of the American Hardware Manufacturers' Association, which includes the principal manufacturers of hardware in the United States.

The officers and members of the Jobbers' Association made known to the officers and members of the Hardware Manufacturers' Association that the former disapproved of sales of hardware to jobbers or wholesalers who do not conform to the policy approved by the Jobbers' Association on the same terms and conditions as are accorded to jobbers and wholesalers who conform to that policy. The Jobbers' Association furnished to the Hardware Manufacturers' Association and its members lists of so-called regular jobbers and wholesalers in the territory mentioned, and notified them that named jobbers or wholesalers in that territory, including the Co-operative Association and the American Purchasing Company, did not conform to the policy approved by the Jobbers' Association. By such means manufacturers of hardware were warned by petitioners not to trade or deal with objectionable wholesalers or jobbers on the same terms accorded to so-called regular jobbers or wholesalers on pain of losing the trade or patronage of members of the Jobbers' Association.

In the territory mentioned there are many retailers whose requirements of hardware were and are sufficiently large to make it practicable and profitable for manufacturers to sell direct to them and on the same terms and conditions as they accord to members of the Jobbers' Association. Hardware manufacturers are deterred from selling to such dealers on the same terms that are accorded to members of the Jobbers' Association by the fear of losing the patronage of members of that association. By means of recited action participated in by petitioners, manufacturers of hardware, by threats of loss of the pat-

ronage of so-called regular jobbers or wholesalers if they sold to the Co-operative Association or the American Purchasing Company on the same terms accorded to members of the Jobbers' Association, were induced to refuse to deal with, or to sell to, the Co-operative Association and the American Purchasing Company, in interstate commerce, on the same terms which are accorded to members of the Jobbers' Association and to wholesalers and jobbers who conform to the policy of distribution approved by the Jobbers' Association.

The stated conclusion of the commission was that the acts, agreements, understanding, policies, and practices of the petitioners, and each and all of them, are unfair methods of competition in interstate commerce, and constitute a violation of the Federal Trade Commission Act. 38 Stat. 719 (Comp. St. §§ 8836a–8836k). By the order complained of the petitioners were to forever cease and desist from:

"(1) Combining and conspiring among themselves or with others, directly or indirectly, to induce, persuade, or compel and from inducing, persuading, or compelling, manufacturers, importers, or producers, their agents or brokers, to refuse to sell to the American Purchasing Company or the Merchants' Co-operative Association because of any plan of organization or method of transacting business adopted by said company.

"(2) Combining and conspiring among themselves and with others to give, and from giving, directly, or indirectly, verbal, written, or other notices or communications to manufacturers, importers, and producers, their agents or brokers, that business concerns not members of the Southern Hardware Jobbers' Association, and not in harmony with the plans and policies of the said association, and not conforming to the tests and standards set up by the said association for membership therein, are not entitled to purchase and obtain goods, wares, and merchandise upon the same terms and conditions usually accorded by said manufacturers, importers, and producers to the members of the Southern Hardware Jobbers' Association.

"(3) Combining or conspiring together among themselves or with others, and from using any scheme or device or means whatsoever to accomplish that result, directly or indirectly, to hinder, obstruct, or prevent manufacturers, producers, or importers, their brokers or agents, from dealing with the American Purchasing Company or the Merchants' Co-operative Association, or others engaged in similar business, upon as favorable terms and conditions usually accorded by the said manufacturers, producers, or importers, to the members of the said Southern Hardware Jobbers' Association.

"(4) Hindering, obstructing, or preventing, directly or indirectly, any manufacturer, producer, or importer or broker or agent thereof, from selling and shipping, either or both, in interstate commerce, to the American Purchasing Company or to others engaged in similar business.

"(5) Combining and conspiring together among themselves, or with others, and from using any scheme or device or means whatsoever to accomplish that result, directly or indirectly, to hinder, obstruct, or prevent the American Purchasing Company or the Merchants' Co-operative Association, or others engaged in similar business, from freely purchasing and obtaining, in interstate commerce, the goods, wares, and merchandise usually handled by the said company or association in the course of their business, or from freely competing in interstate commerce with the members of the Southern Hardware Jobbers' Association, Beck & Gregg Hardware Company, the Dinkins-Davidson Hardware Company, King Hardware Company, George E. King, or others engaged in similar business.

"(6) Combining and conspiring, directly or indirectly, among themselves or with others, to establish and to continue maintaining any tests or standards for determining whether said American Purchasing Company or Merchants' Co-operative Association, or others engaged in similar business, shall be permitted to purchase goods, wares, and merchandise in interstate

commerce upon the same terms and conditions as the members of the said Southern Hardware Jobbers' Association.

"(7) Combining and conspiring, directly or indirectly, among themselves or with others, to publish or to distribute, and from publishing or distributing, to manufacturers, importers, and producers, their agents or their brokers, engaged in selling goods, wares, and merchandise, especially hardware, among the various states, lists of the members of the Southern Hardware Jobbers' Association, for the purpose and with the intent of influencing said manufacturers, importers, producers, their agents, and their brokers, to refrain from making sales of such commodities to others than those named in such lists in the territory covered by the said association.

"(8) Combining and conspiring among themselves, or with others, to induce, coerce, and compel manufacturers, importers, and producers, or their agents, or their brokers, directly or indirectly, to refuse to sell goods, wares, and merchandise to the American Purchasing Company or to the Merchants' Co-operative Association, either or both, or to others engaged in the same business, upon the same terms and conditions usually offered and given by the said manufacturers, importers, and producers, their agents or their brokers, to the members of the Southern Hardware Jobbers' Association.

"(9) Carrying on between and among themselves, or with others, communications, written or verbal, having the purpose, tendency, or the effect of inducing, coercing, or compelling manufacturers, importers, or producers of goods, wares, and merchandise, especially hardware, their agents or their brokers, directly or indirectly, to refuse to deal with or to sell to the American Purchasing Company, or to the Merchants' Co-operative Association, or others engaged in similar business, upon the same terms and conditions usually accorded by said manufacturers, importers, and producers to the members of the Southern Hardware Jobbers' Association.

"(10) Combining or conspiring among themselves, or with others, to compel, or to attempt to compel, the American Purchasing Company, or the Merchants' Co-operative Association, or others engaged in a similar business, to purchase the goods, wares, and merchandise required for their business from or through any competitor of said Purchasing Company or said Co-operative Association, or from others similarly engaged.

"(11) Combining or conspiring among themselves or with others to boycott, or to threaten to boycott, or to threaten with loss of patronage or custom, any manufacturer, importer or producer, or his agent or broker, engaged in interstate commerce, for selling or agreeing to sell to the American Purchasing Company or the Merchants' Co-operative Association, or others engaged in a similar business, on the same terms and conditions accorded by such manufacturer, importer, or producer, or his agent or broker, to members of the Southern Hardware Jobbers' Association."

[1] Evidence adduced warranted the conclusion that a main purpose of the Jobbers' Association, its officers and members, was to promote the policy of distributing hardware from manufacturer to wholesaler or jobber, from wholesaler or jobber to retailer, and from retailer to customer, only in the way they approved. It is consistent with that policy for a wholesaler or jobber to be also a retailer, if he has in his business a specified amount of capital, if a specified per cent. of his gross sales of not less than a specified amount a year is to dealers, and if he keeps constantly on the road not less than a specified number of salesmen. It is contrary to that policy for a retailer, unless he is also a wholesaler or jobber, who complies with the just mentioned requirements, to have such relations with a wholesaler or jobber or interest in the business of a wholesaler or jobber as results in the retailer receiving the whole or a part of the profits realized by the wholesaler or jobber on sales made by him to the retailer.

The plan of doing business adopted and attempted to be put into

effect by those who promoted and organized the Co-operative Association and the American Purchasing Company was not in harmony with the policy of the Jobbers' Association, as it was a feature of that plan of business that a retailer who gets hardware through the concerns mentioned shares in the profits realized by such concerns on sales made by them to the retailer, though such retailer does no wholesale business. It was part of the plan of the promoters and organizers of the Co-operative Association and the American Purchasing Company to supply hardware to only such retailers as were willing and able to pay cash for the hardware they bought. A result of a hardware manufacturer conforming to the policy approved by the Jobbers'. Association is that one who is solely a retailer cannot buy hardware directly or indirectly, or in co-operation with other such retailers, from such manufacturer on the same terms as are accorded to retailers who are members of the Jobbers' Association, though such retailer buys in what, as between the manufacturers and jobbers or wholesalers, are recognized as wholesale quantities.

A consequence of the success of the policy approved by the Jobbers' Association is to impair the ability of jobbers or wholesalers who share with dealers who are exclusively retailers, to whom they sell, the profits realized on such sales, to compete with jobbers or wholesalers who retain the profits realized on sales made by them to such retailers, as jobbers or wholesalers so sharing their profits with buyers who sell only at retail cannot buy hardware from the manufacturer at jobbers' prices and terms. Another consequence of the success of the policy mentioned is to give to retailers who are also such jobbers or wholesalers as are eligible to membership in the Jobbers' Association a substantial advantage over dealers who sell .only at retail, thereby restraining or hindering competition by the last-mentioned dealers.

Whatever influences manufacturers of hardware to refuse to sell their products to dealers who are obnoxious to the Jobbers' Association on the same terms as are allowed to members of that association and those who conform to its policy tends to restrain trade by obstructing or preventing it with such obnoxious dealers. There was evidence of conduct by each of the petitioners which was intended to induce, and' was effective in inducing, manufacturers not to sell to the Co-operative Association or one buying for it on the same terms which were accorded to members of the Jobbers' Association. If that conduct was in pursuance of an agreement or understanding, express or implied, to which petitioners were parties, thereby to hinder or obstruct the free and natural flow of commerce in interstate trade, it constituted an "unfair method of competition," within the Federal Trade Commission Act. Federal Trade Commission v. Beech Nut Co., 257 U. S. 441, 453, 42 Sup. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882; Wholesale Grocers' Association v. Federal Trade Commission (C. C. A.) 277 Fed. 657.

[2] It was permissible to consider the conduct of the petitioners in the light of the fact that it was disclosed that they had in common the purpose to put into effect the above-mentioned policy of the Jobbers' Association. The doing by them of like acts to induce manufacturers to conform to that policy was, under the circumstances, indicative of

the existence of an agreement or understanding between them to co-operate in furtherance of that policy. From the evidence as to the relations between the Jobbers' Association, its officers and members, and hardware manufacturers and their organization, it well might be inferred that manufacturers, in conforming to the Jobbers' Association policy, were influenced by the desire to retain the custom and good will of the large body of wholesale buyers banded together in the Jobbers' Association, and that such manufacturers, or many of them, were induced or coerced by the united opposition of the members of the Jobbers' Association not to sell hardware in wholesale quantities and at jobbers' prices and terms to dealers such as the Co-operative Association, which was prepared to buy in large quantities and sought no credit for goods bought.

The circumstances attending the furnishing to hardware manufacturers or their association of lists of members of the Jobbers' Association, and the giving of notice to such manufacturers that named dealers were irregular or not entitled to be treated as legitimate wholesalers, were such that it could properly be inferred that those acts were intended to have, and had, the effect of warnings to the manufacturers against selling on usual wholesale terms to dealers who were not members of the Jobbers' Association or who were so charged with non-compliance with the policy of that association. There was evidence tending to prove that the petitioners combined and co-operated to keep manufacturers willing to do so from selling their products at wholesale prices and terms to the Co-operative Association and the American Purchasing Company, and to obstruct and prevent those concerns from competing as jobbers or wholesalers in territory sought to be appropriated by the Jobbers' Association and dealers conforming to the method of doing business which was approved by that association.

That evidence warranted the conclusion that what the petitioners did to thwart the success of the Co-operative Association and the American Purchasing Company went beyond each of the petitioners asserting and seeking to enforce its or his individual views as to business policies or methods, and amounted to co-operation between them in furtherance of a common purpose to prevent hardware manufacturers selling without price discrimination to exclusively retail dealers or organizations buying for such retailers on terms which effect a saving to retailers of all or part of the profit which regular wholesalers or jobbers retain, with the result of requiring such retailers to get hardware only through the self-styled legitimate wholesalers or jobbers. The existence of a combination in restraint of trade may be inferred from evidence of circumstances indicating concert of action to that end. American Column Co. v. United States, 257 U. S. 377, 42 Sup. Ct. 114, 66 L. Ed. 284, 21 A. L. R. 1093.

The success of the concerted action in which the petitioners participated meant the monopolizing of the wholesale hardware trade in an extensive territory by members of the Jobbers' Association and dealers conforming to the above-mentioned policy, and also meant the exclusion of hardware retailers in that territory from sources of supply available to wholesalers unless they combined wholesaling and retail-

ing in the particular way which was approved by the Jobbers' Association. We are of opinion that such concerted action involved restraint of interstate trade, and is a proper subject of a Federal Trade Commission order to cease and desist.

[3] As affecting the kind of interstate trade undertaken to be carried on by the Co-operative Association and the American Purchasing Company, none of the things enumerated in the order complained of includes conduct which the petitioners are entitled to persist in. The doing or continuing to do by the petitioners of the things enumerated in the order to cease and desist is incompatible with the discontinuance of the practices condemned by the commission. Under the circumstances, the doing of the forbidden things would be concerted action tending to restrain competition in interstate trade. That being so, we do not think that that order is too broad.

We conclude that the petition should be denied; and it is so ordered.