**PHELPS DODGE REFINING CORPORATION v. FEDERAL TRADE COMMISSION.**

**TENNESSEE CORPORATION v. SAME.**

**JOHN POWELL & CO., Inc., et al. v. SAME.**

**AMERICAN CYANAMID & CHEMICAL CORPORATION v. SAME.**

Nos. 9–12.

Circuit Court of Appeals, Second Circuit.

Dec. 23, 1943.

SWAN, Circuit Judge.

In May 1940 the Federal Trade Commission issued a complaint against the Agricultural Insecticide & Fungicide Association, its officers and directors, a number of its members and certain non-members, charging them with using unfair methods of competition in commerce, as defined in the Federal Trade Commission Act, 15 U.S. C.A. § 41 et seq. After the filing of answers and a stipulation of facts the Commission made findings of fact and issued a cease and desist order against 38 named respondents, including all of the present petitioners, who were found to have combined to restrain and suppress competition in agricultural insecticides and fungicides. In the Matter of Agricultural Insecticide & Fungicide Assn. et al., 35 F.T.C. 201.

Four of the corporate petitioners, whom for brevity we shall refer to as Powel, Southern, Stauffer and Cyanamid, were members of Agricultural Insecticide & Fungicide Association. Petitioner Demmon was a director of the Association and an officer of Stauffer. The other two petitioners, who will be referred to as Phelps Dodge and Tennessee, were not members of the Association; they were found to have cooperated with the Association and its members. All of the petitioners challenge the order of the Commission on the ground that the findings of fact upon which it is based are not supportable as against them. Hence the only question before us is as to the sufficiency of the proof to connect the several petitioners with the illegal conspiracy in which all the respondents were found to be engaged.

 In approaching this question the court must bear in mind that findings of the Commission as to the facts, if supported by evidence, are made conclusive by the terms of the Act, 15 U.S.C.A. § 45(c). This means that the weight to be given to admitted facts and circumstances, as well as the inferences reasonably to be drawn from them, is for the Commission. Fed. Trade Comm. v. Pac. Paper Assn., 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534. The court is not to try the case anew, and may not pick and choose between conflicting inferences, if the one drawn by the Commission is permissble. Fed. Trade Comm. v. Algoma Co., 291 U.S. 67, 73, 54 S.Ct. 315, 78 L.Ed. 655; National Labor Relations Board v. Nevada Copper Co., 316 U.S. 105, 106, 62 S.Ct. 960, 86 L.Ed. 1305.

William H. Wurts, of New York City (Arthur W. Rinke, of New York City, of counsel), for petitioners in the first mentioned petition.

Henry C. Little, of New York City (Arthur W. Rinke, of New York City, of counsel), for petitioner in second petition.

Reeves, Todd, Ely & Beaty, of New York City (David Cohen, of New York City, of counsel), for petitioner in third petition.

Guggenheimer & Untermyer, of New York City (Jules C. Randal, of Buffalo, N. Y., and Harry Hoffman, of New York City, of counsel), for petitioner in fourth petition.

W. T. Kelley, Chief Counsel for Federal Trade Commission, by Eugene W. Burr, and Reuben J. Martin, Sp. Attys. for Commission, all of Washington D. C., for respondent.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

■ The stipulation of facts states that the Association, organized in 1934, has acted as a clearing house for the exchange of information submitted by its members, including reports as to the sales of various types of insecticides, fungicides and related items, together with the prices, terms and discounts at which said items are sold, or offered to be sold, and in some instances including advance notice of future prices. Thus it admits of no doubt that the association and some of its members were engaged in price fixing, which violated the Act. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1229. The stipulation likewise reveals that the association prepared and distributed so-called "distributor guides", lists of wholesale buyers entitled to favorable concessions not given the trade in general. This too bears the taint of illegality. Eastern States Lumber Co. v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788; Fashion Originators' Guild v. Fed. Trade Comm., 2 Cir., 114 F.2d 80, affirmed 312 U.S. 457, 61 S.Ct. 703, 85 L. Ed. 949. The agreement need not be proven by direct evidence; conduct pointing to concerted action is sufficient. Eastern States Lumber Co. v. United States, supra; Southern Hardware Jobbers' Ass'n v. Fed. Trade Comm., 5 Cir., 290 F. 773. The Commission argues that this being established, the complicity of Powell, Southern, Stauffer and Cyanamid is proved by the fact of their membership in the association. We are not prepared to hold that mere membership is enough. If the purposes of an association are lawful on their face, we doubt that its members should be held for acts of the association outside its purposes, unless knowledge of the illegal acts is brought home to the members. But the present record does not squarely present this question. Nor did Standard Container v. Fed. Trade Comm., 5 Cir., 119 F.2d 262, upon which counsel for the respondent strongly relies. There the evidence was that members adhered or were disqualified for not adhering to the price lists. See 119 F.2d at page 266. Other cases relied upon, where broad orders of the Commission have bound parties who did not contest their application, have no persuasive weight, as for example, In the Matter of American Photo-Engravers Ass'n, 12 F.T.C. 29; Chamber of Commerce of Minneapolis v. Fed. Trade Com., 7 F.T.C. 115, affirmed 8 Cir., 13 F.2d 673.

■ By their answers Powell, Southern and Stauffer admitted that after announcement to the trade they filed their prices with the association and received through it announcements of previous price changes by other manufacturers. Southern and Stauffer further admitted that they submitted lists of wholesale customers and received "distributor guides" prepared by the association. None admits that it agreed to adhere to the price lists or become a party to the price-fixing combination, nor do the latter two concede the illegality of the dealer lists. But we think it was permissible for the Commission to infer that when these companies sent in their data they knew what use was to be made of them. They did affirmative acts, and if they had not acquainted themselves fully with the association's purposes with respect to the data, at least it was for them to prove that fact. Otherwise the inference of their complicity could reasonably be drawn.

■■ The answer of Cyanamid admitted that from time to time it received through the association announcements of previous price changes by other manufacturers; but there is no admission or proof that it ever furnished its own price lists to the association. It also received dealer lists from the association, and these contained the names of some of its customers. In the absence of proof to the contrary we think the receipt of these price lists and dealer lists was enough from which to infer that the company learned of the association's illegal activities. Both price lists and dealer lists have been the source of much litigation and their circulation is commonly recognized as a potential means of restraining competition. We think that at least it should put a member of a trade association upon inquiry and charge him with knowledge of what an inquiry would have disclosed as to his association's activities. Thus the issue is reduced to whether a member who knows or should know that his association is engaged in an unlawful enterprise and continues his membership without protest may be charged with complicity as a confederate. We believe he may. Granted that his mere membership does not authorize unlawful conduct by the association, once he is chargeable with knowledge that his fellows are acting unlawfully his failure to dissociate himself from them is a ratification of what they are doing. He becomes

one of the principals in the enterprise and cannot disclaim joint responsibility for the illegal uses to which the association is put. While the culpable role of petitioner Cyanamid is less clearly established than that of the three petitioners already considered, it nevertheless sustains the Commission's findings.

 There is only one item of proof as to Phelps Dodge and Tennessee but it is ample to establish their complicity. It is the so-called "Gunther memorandum" of the meeting of November 15, 1937 at which price-fixing was clearly agreed upon. Phelps Dodge, whose corporate name was then Nichols Copper Co., was represented by Mr. Rice and Tennessee by Mr Porter. The memorandum relates that both these representatives were appointed by the president of the association to serve on a committee "to prepare a list of agents, propose price schedules, etc." It is true that Gunther's memorandum is hearsay; but it is persuasive hearsay, and the Commission is not bound to follow the strict rules of evidence which prevail in courts of law. John Bene & Sons v. Fed. Trade Comm., 2 Cir., 299 F. 468. Moreover, it was included in the stipulation to which these petitioners agreed. Having staked the outcome of the proceedings upon this presentation of evidence they may not now repudiate their agreement. Forbes v. Comm'r of Int. Rev., 1 Cir., 82 F.2d 204, 207, 208; Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 127 F.2d 799, 804; cf. Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539. The memorandum was set forth for the obvious purpose of being considered by the Commission as evidence of the facts stated. That being true the inference that Rice and Porter had authority to act for the corporations which Gunther stated they represented was plainly permissible. And the illegality of their participation was incontestibly established by express description.

All that the record discloses about petitioner Demmon is that he was a director of the association and held some unnamed office in Stauffer. It does not appear that he ever attended a directors' meeting or knew anything about the illegal activities of the association or the supplying and receipt of price lists and dealer lists by Stauffer. The ordinary doctrine is that a director, merely by reason of his office, is not personally liable for the torts of his corporation; he must be shown to have personally voted for or otherwise participated in them. Leonard v. St. Joseph Lead Co., 8 Cir., 75 F.2d 390, 395; Metropolitan El. R. Co. v. Kneeland, 120 N.Y. 134, 144, 24 N.E. 381, 8 L.R.A. 253, 17 Am.St.Rep. 619; 19 C.J.S., Corporations, p. 271, § 845. The doctrine seems applicable here. The finding against petitioner Demmon is therefore unsupported, and his inclusion by name in the order is not sustained.

Accordingly the order is affirmed as to the corporate petitioners and reversed as to Demmon. An order of enforcement, excluding his name, may be entered.