Louis BUCHWALTER and Emanuel Cohen, co-partners, trading as National Feather & Down Company, Petitioners-Appellants,

v.

FEDERAL TRADE COMMISSION, Respondent-Appellee.

The L. BUCHMAN CO., Incorporated, a corporation and Irving Buchman, Sylvan Buchman and Tillie Buchman, Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

SANITARY FEATHER & DOWN CO., Inc., a corporation, and Martin Braff, Joe Braff, Philip Kestenbaum and Stanford W. Braff, individually and as officers of said corporation, Petitioners-Appellants,

v.

FEDERAL TRADE COMMISSION, Respondent-Appellee.

Nos. 311, 312, 328,

Dockets 23805, 23806, 23807.

United States Court of Appeals Second Circuit.

Argued May 15, 16, 1956.

Decided July 9, 1956.

Davidson, Cohen & Zelkin, New York City (Max I. Cohen, New York City, of counsel), for petitioners-appellants Buchwalter and Buchman.

Selig Kaplan, Brooklyn, N. Y., for petitioners-appellants Sanitary Feather & Down Co. and others.

Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, J. B.

Truly, Joseph B. Kennedy, Jr., Washington, D. C., Attys., for respondent-appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

These are petitions to review and set aside cease and desist orders of the Federal Trade Commission issued under § 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. Petitioners National, Buchman and Sanitary are engaged in the business of manufacturing and selling feather and down pillows to dealers or retailers for resale to the general public.[1] The complaints charged that the labels affixed to petitioners' pillows contained representations as to the content of the pillows which were false, misleading, and deceptive, and that these false representations had the capacity and tendency to deceive dealers and the purchasing public. The Commission, after holding extensive hearings on these and other complaints, involving virtually every manufacturer in the feather and down pillow industry, found that each of the petitioners had violated the Trade Practice Rules for the Feather and Down Products Industry, promulgated by the Commission on April 26, 1951, 16 CFR (1956 Supp.) 200; and that such violations constituted "unfair or deceptive acts or practices in commerce" under § 5 (a) (1) and (6) of the Act, 15 U.S.C.A. § 45(a) (1) and (6), and issued appropriate orders to cease and desist. Because the three cases involve almost identical issues, they have been considered together.

The questions raised by these petitions are as follows: (1) whether the Commission's finding that petitioners' pillows are falsely labeled as to content is supported by reliable, probative and substantial evidence; (2) whether the false labeling constitutes "unfair or deceptive acts or practices," having the tendency or capacity to deceive purchasers; (3) whether compliance with the Commission's orders is impossible because of inability to obtain pure supplies and to separate different types and grades of down and feathers; and (4) whether the Commission's order is a valid and constitutional exercise of regulatory authority. With the exception of (4) and several minor issues advanced by two of the petitioners, National and Sanitary, these questions are identical to those raised in companion cases recently decided by the Third Circuit. Northern Feather Works, Inc., v. Federal Trade Commission and Sumergrade v. Federal Trade Commission, 3 Cir., 1956, 234 F.2d 335. The close identity of the issues in all of these cases (the three involved here and the two involved in the Third Circuit decision) is evidenced by the fact that they, along with five other companion cases, were initiated by the Commission by similar complaints brought at the same time, and were heard simultaneously before the same Hearing Examiner. By stipulation, all the evidence in eight of these ten cases, including all those here involved, was made a part of the record in each case except insofar as such evidence related exclusively to the identification, content and analyses of the feather and down samples in each individual case.

We are in entire agreement with the views expressed by Judge Goodrich, speaking for the Third Circuit, in Northern Feather Works, Inc., v. Federal Trade Comm'n and its companion case, supra, affirming the Commission in all respects. A repetitious statement of the

---

1. In the Louis Buchwalter case, No. 23805, the petitioners are Louis Buchwalter and Emanuel Cohen, co-partners, doing business as the National Feather & Down Company (hereafter referred to as "National"). In The L. Buchman case, No. 23806, the petitioners are The L. Buchman Co., a New York corporation (hereafter referred to as "Buchman"), and its principal officers: Irving Buchman, Sylvan Buchman, and Tillie Buchman. In the Sanitary Feather case, No. 23807, the petitioners are the Sanitary Feather & Down Co., Inc., a New York corporation (hereafter referred to as "Sanitary"), and its officers: Martin Braff, Joe Braff, Philip Kestenbaum and Stanford W. Braff.

same views is unnecessary in light of the adequate discussion of Judge Goodrich. Consequently, we will discuss here only the issues not raised in the Northern Feather Works case.

National challenges the Commission's finding of false labeling principally on the ground that duck feathers, because they could not be separated from goose feathers, should have been included in determining the goose feather content of its pillows.[2] However, the Commission's finding was based on the testimony of the Commission expert that the relative proportion of duck and goose feathers can be controlled within the 15% tolerance allowed by the Trade Practice Rules. The Commission was not required to accept the conflicting testimony relied on by National. Standard Distributors v. Federal Trade Comm'n, 2 Cir., 1954, 211 F.2d 7, 12.

■■ Sanitary attacks the Commission's findings against it on the grounds that they are based on incompetent evidence and that the evidence accepted by the Commission is unreliable. Sanitary argues that the reports of the tests performed under the supervision of the testifying expert were inadmissible as hearsay because the subordinates did not testify and because the expert did not perform the actual tests.[3] But administrative agencies are not rigidly restricted by the jury trial rules of evidence. Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 155, 657, 61 S.Ct. 524, 85 L.Ed. 624; Federal Trade Comm'n v. Cement Institute, 1948, 333 U.S. 683, 705–706, 68 S.Ct. 793, 92 L.Ed. 1010; Phelps-Dodge Refining Corporation v. Federal Trade Comm'n, 2 Cir., 1943, 139 F.2d 393, 397. Moreover, even if such rules were applied, it is doubtful whether test reports, when testified to by a person supervising and participating in them, are hearsay. See 5 Wigmore on Evidence §§ 1385, 1385a.

■ Finally, Sanitary suggests that the inflexible application of the tolerance allowed by the Trade Practice Rules is repugnant to the Constitution as a denial of due process. This argument rests on the false assumption, dealt with in the Northern Feather Works case, supra, that compliance with the Commission's orders places an exceedingly difficult or impossible burden on petitioners. The fact that petitioners may have to regulate their mechanical separating machines so as to attempt to produce the feather and down content specified in the labels, instead of aiming at that amount less the 15% tolerance, is not a denial of due process. See Schmidinger v. City of Chicago, 1913, 226 U.S. 578, 33 S.Ct. 182, 57 L.Ed. 364; Dictograph Products, Inc., v. Federal Trade Comm'n, 2 Cir., 1954, 217 F.2d 821, 826, certiorari denied 349 U.S. 940, 75 S.Ct. 784, 99 L.Ed. 1268.

The petitions to set aside the orders are denied, and the orders are affirmed.

2. The analyses relied on by the Commission showed an average goose feather content of 61.15% in pillows labeled 80% goose feathers, and of 70.5% in pillows labeled 100% goose feathers. These percentages are well below the 15% tolerance permitted by the Trade Practice Rules. 16 CFR (Supp.1956) § 200.3(c) (1). The 15% tolerance means, for instance, that a pillow labeled "100% down" and containing only 85% down will not be considered as mislabeled.

3. The subordinates who performed the tests were not called as witnesses by Sanitary to rebut the supervising expert's testimony. Moreover, the supervising expert was closely cross-examined by petitioners on all phases of the sampling and testing techniques involved. As a matter of fact, tests made by the various petitioners were made in much the same way, and were admitted in evidence without the production of the persons who actually took the samples.