**EXPERT ELECTRIC, INC., et al.,**
**Plaintiffs,**

v.

**Louis L. LEVINE, Individually and as Industrial Commissioner of the State of New York, Defendant.**

**No. 75 Civ. 2433.**

United States District Court,
S. D. New York.

July 24, 1975.

Morris Weissberg, N. George Turchin, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, by Dominick J. Tuminaro, Asst. Atty. Gen., for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs, members of the United Construction Contractors Association, Inc. ("United"), by order to show cause,

have moved to enjoin defendant Industrial Commissioner of New York from cancelling the registration of apprentice electricians employed by plaintiffs and from disqualifying each plaintiff from employing registered apprentice electricians for a three-year period. A hearing was held on May 30, 1975, at which time the plaintiffs were afforded the opportunity to present evidentiary proof of their factual contentions but declined to do so preferring to stand on their position that their constitutional rights had been violated *per se* by plaintiffs being disqualified from participation in the state apprentice program without being found personally to have violated the requirements of the state Department of Labor. Defendant has moved pursuant to Rule 12(b)(1) and (6), F.R.Civ.P., to dismiss the action.

*Background Facts*

Plaintiffs are electrical contractors and members of United, a New York membership corporation which conducts collective bargaining negotiations and enters into collective bargaining agreements on behalf of its members with Local 363, International Brotherhood of Teamsters ("Local 363"). The local is comprised of journeymen and apprentice electricians.

United and Local 363 formed the Joint Apprenticeship Committee ("JAC") to sponsor an apprenticeship training program, *see* Article 23 (Apprenticeship Training) of New York's Labor Law, and filed a Master Agreement, pursuant to §§ 811(1)(d) and 220 (3-e) of the Labor Law [1], with the State Department of Labor on or about December 1, 1971. Under the terms of the Master Agreement and Labor Law §§ 811, 812 and 815 (McKinney's 1965), the registered apprentices were to re-

ceive on-the-job training in the processes of the electrician's trade according to a schedule of work processes contained in the Master Agreement. The apprentices were also to receive 144 hours of related and supplemental classroom instruction. Master Agreement, Appendix B; Labor Law, § 815(3).

On June 17, 1974, defendant Industrial commissioner, pursuant to 12 N.Y.C.R.R. 601.7, served a notice of proposed deregistration of the apprenticeship agreement and program upon JAC, Local 363, and United. The notice set forth certain allegations by the Department of Labor, summarized by the Commisioner as follows:

"1. The Joint Apprenticeship Committee sponsor allegedly failed to complete the training of apprentices as provided under the standards contained in Article 23 of the Labor Law and under the terms and conditions of the Master Agreement entered into by the Joint Apprenticeship Committee.

"2. Some of the employers who were participants in the J.A.C. allegedly failed to pay prevailing wages or used apprentices in excess of the proper ratio for electricians in the locality.

"3. That long after the violations and shortcomings of the program were originally made known to the sponsor in June of 1973, the sponsor allegedly failed to correct the violations and to comply with the rules and regulations in their own Master Agreement. These allegations resulted from a survey initiated by the Department in March of 1974, which purported to show that the apprentices were not receiving proper related instruction and that the participating employers were still using excessive apprentices."

1. § 811(1)(d) empowers the Industrial Commissioner "to register approved apprenticeship agreements, and upon performance thereof, to issue certificates of completion of apprenticeship." Labor Law, § 811(1)(d) (McKinney's 1965). § 220(3-e) provides that

"[a]pprentices will be permitted to work as such only when they are registered, individually, under a bona fide program registered with the New York State Department of Labor." Labor Law, § 220(3-e) (McKinney's Supp.1974).

Order and Determination of the Industrial Commissioner, at 1–2.

Upon request of JAC, United and Local 363, five hearings were thereafter held, and the three respondents were all represented by separate counsel at these hearings. The recommendations of the hearing panel were reviewed and subsequently sustained by the Commissioner, who found:

"1. From the inception of the program in 1961 until 1973, not one of the 574 apprentices achieved completion of the program or certifiable journeyman status.

"2. The sponsor not only failed to meet its obligations to provide related classroom instruction but by its own actions made it impossible for any apprentice to obtain the necessary 144 hours of related classroom instruction.

"3. The sponsor in a Joint Apprenticeship Committee consists of the union and each contractor having a collective bargaining agreement with said union. Therefore the act of each participating contractor in an apprenticeship program is attributable to the sponsor.

"4. The sponsor failed to take any substantial corrective action with respect to violations of the Labor Law despite the fact that such violations were matters of public record.

"5. The record indicates that the sponsor, after agreeing to correct deficiencies in the program, failed to do so." *Id.* at 7.

Following the provisions of 12 NYCRR 601.7(c)(4), 601.8,[2] the Commissioner cancelled the registration of apprentice electricians employed by plaintiffs, and, for a period not to exceed three years, disqualified them from both employing registered apprentices and from registering any apprenticeship agreement or training program in their individual names as employers.

*Contentions of the Parties*

Plaintiffs base their motion for a preliminary injunction on three grounds: (1) that they were denied due process of law mandated by the Fourteenth Amendment, because they have been held responsible for acts of JAC, United and Local 363 which they did not authorize, ratify or participate in; (2) that they were denied due process of law because they were not provided with notice and an opportunity to be heard, as individual employers, on the proposed deregistration, and (3) that they were denied equal protection of the laws as guaranteed by the Fourteenth Amendment, because plaintiffs' program has been deregistered while no similar action has been taken against their competitors' program which allegedly produced complaints of Article 23 violations. Because they now have to pay all workers full wages instead of lower apprentice wages, plaintiffs claim irreparable harm resulting from their inability to bid competitively for public contracts.

Defendant seeks dismissal of the complaint on the grounds that the court lacks subject-matter jurisdiction over the action and that the complaint fails to state a claim upon which relief can be granted.

2. 12 NYCRR 601.7(c)(4) states:
  "(c) *Procedure for formal deregistration*
  "(4) In each case in which deregistration is ordered, the commissioner shall publish promptly in newspapers of general circulation a notice of the order and shall notify the registrant. In addition, the commissioner shall promptly notify all registered apprentices of the deregistration of the program; the effective date thereof; that such cancellation automatically deprives the apprentice of his individual registration;

and that the deregistration removes the apprentice from coverage for State purposes." 12 NYCRR 601.8 provides:
  "Restatement of program registration. Any apprenticeship program formally deregistered pursuant to this Part may not be reinstated for a period not to exceed three years, nor shall the sponsor or any employer or union participant be eligible to register any apprenticeship training program under any other name for such period."

*Discussion*

■ Plaintiffs' initial contention is that they cannot be held legally responsible for acts by JAC, United, Local 363, or by any employers other than plaintiffs which violated the Master Agreement or the standards of Article 23.

JAC, the program's sponsor, was formed pursuant to the agreement by Local 363 and United. The latter, of which all plaintiffs are members, represents the employers in negotiations and agreements with the union; when United added its signature to the Master Agreement it did so on behalf of its members. This was the only agreement on the table; the Commissioner, in registering the program, entered into a contract with United and JAC, not with plaintiffs individually. Plaintiffs enjoyed the benefits of the program through their membership in the signatories; they therefore cannot complain when the Commissioner terminates these benefits when he finds the signatories to be in violation of the terms and spirit of the Master Agreement and Article 23.

Moreover, Labor Law § 817 states:

"The provisions of this article [Article 23] shall apply to a person, firm, corporation or craft only after such person, firm, corporation or craft has voluntarily elected to conform with its provisions."

The regulations enacted pursuant to Article 23 clearly indicate that the sponsor of the training program, including the joint apprenticeship committee, acts as agent for participating employers. See 12 NYCRR 601.3(b), (c) and (e). The Master Agreement commits participating employers or the apprenticeship committee acting as agent for the employers to evaluate periodically the apprentices' progress, both in job performance and related instruction, and to maintain appropriate records. This obligation is a prerequisite for the registration of the program. See 12 NYCRR 601.5(c)(6). The Master Agreement requires 144 hours of related instruction for each apprentice; this too, is a con-

dition of registration. See Labor Law, § 812; 12 NYCRR 601.5(c)(4).

Plaintiffs have not alleged that they unwittingly became participating employers, or were forced to employ apprenticeship labor at lower wages. In fact, the regulations explicitly provide that no apprenticeship program or agreement shall be eligible for registration unless the Commissioner finds that ". . . in the case of a Joint Apprenticeship Committee the participating employers have agreed to register all of the apprentices in their employ." 12 NYCRR 601.4(a)(4). By voluntarily participating plaintiffs agreed to the terms and regulations of Article 23, including 12 NYCRR 601.8; *supra* n. 2. Plaintiffs cannot have it both ways. It is fundamentally disingenuous for these plaintiffs, who have reaped the benefits of the apprenticeship program, now to argue that they are free from the statutory and regulatory commitments and restrictions which the Master Agreement bound the participants to observe and from the consequences of failing to do so.

■ Plaintiffs argue, nonetheless, that mere membership in an association does not create liability in the members for the acts of the association. In *Phelps Dodge Refining Corp. v. FTC,* 139 F.2d 393, 396–97 (2d Cir. 1943), a seminal case concerning the liability of members for acts of their association, the court stated:

"Thus the issue is reduced to whether a member who knows or should know that his association is engaged in an unlawful enterprise and continues his membership without protest may be charged with complicity as a confederate. We believe he may. Granted that his mere membership does not authorize unlawful conduct by the association, once he is chargeable with knowledge that his fellows are acting unlawfully his failure to dissociate himself from them is a ratification of what they are doing. He becomes one of the principals in the enterprise and cannot disclaim joint

responsibility for the illegal uses to which the association is put."

The Second Circuit found in *Phelps Dodge* that the receipt by a member of certain price and dealer lists mailed by its trade association was enough from which to infer that the member learned of the association's illegal activities, or "at least it should put a member of a trade association upon inquiry and charge him with knowledge of what an inquiry would have disclosed as to his association's activities." *Id.* at 396.

■ Every participating employer in a Joint Apprenticeship Committee forms an integral part of the sponsor and is responsible for seeing that its apprentices are trained in accordance with the provisions of the Master Agreement. It is simply incredible for plaintiffs to contend that they were unaware of the massive violations which the hearing panel found and the Commission endorsed. The fact that not one of the 574 apprentices achieved completion of the training program during a span of a dozen years, and that not one completed 144 hours of required related instruction, should have put each participating employer upon inquiry notice that the sponsor and participating employers were not fulfilling their obligations under the program. Plaintiffs' failure to dissociate themselves from the sponsor is thus a ratification of the condemned activities. 139 F.2d at 396. Plaintiffs' first due process contention is devoid of merit.

■ ■ Plaintiffs' second due process assertion—that they were denied procedural due process since the notice of proposed deregistration did not name plaintiffs individually—requires no extended reply. In order to pass constitutional muster, the

"elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "Due Process," however, "is not a rigid and inflexible formula but is an elusive concept which varies according to the factual context." *Hudson Tire Mart, Inc. v. Aetna Casualty and Surety Co.*, 518 F.2d 671, 673 (2d Cir. 1975).

■ As noted earlier, insofar as the apprenticeship program was concerned, both United and JAC represented the interests of participating employers. *Cf. United States v. Local 638, Enterprise Association of Steam*, 360 F.Supp. 979, 995 (S.D.N.Y.1973), *modified on other grounds*, 501 F.2d 622 (2d Cir. 1974). The notice of proposed deregistration was served on both United and JAC; additionally all plaintiffs received copies of that notice on the same day. A hearing was requested, notice of the hearing was sent to United and JAC, and both entities were represented there by counsel; in fact, the same counsel represent plaintiffs in this action. One of the plaintiffs in this action, Eugene Iovine, Inc., appeared and testified at one of the hearings. Plaintiffs, then, as members of United and as participating employers in the JAC, received actual and constructive notice of the proposed deregistration, and were not denied any opportunity to be heard.

■ Plaintiffs' final point—that they suffered an invidious discrimination in violation of the Equal Protection Clause —similarly deserves short shrift. The complaint alleges that at the hearings on the deregistration, the Department of Labor produced records of over 200 violations of apprenticeship agreements and regulations by competing contractor associations and rival labor unions. Plaintiffs claim that the Commissioner's failure to invoke corrective procedures against these groups constitutes an equal protection violation. Yet, when given the opportunity to support this

claim with some modicum of proof, plaintiffs refused. The court, confronted with bare allegations which neither set out the nature of the purported violations, nor the specification of inaction by the Commissioner, is thus constrained to conclude that there is no substance to the equal protection claim.

■ Further, since no "suspect" classification or fundamental interest is here involved, the alleged selective application of deregistration by the Commissioner must be tested under the less rigorous "traditional" equal protection analysis; that is, it must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate government interest. *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L. Ed.2d 491 (1970). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L. Ed.2d 393 (1961). "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge, supra,* 397 U.S. at 486–87, 90 S.Ct. at 1162. Neither the complaint nor plaintiffs' accompanying affidavits set forth the nature of the alleged violations of the rival associations and locals. For all this court knows, those alleged violations may concern an aspect of apprenticeship programs entirely different from the regulatory problem which caused the Commissioner to deregister the program in the instant case. The state's legitimate interest in "insur[ing] that apprenticeship training programs [which are] developed and registered . . . are of the highest possible quality in all respects of on-the-job training and relat-

ed instruction and that all apprentice training programs provide meaningful employment and relevant training for all apprentices," 12 NYCRR 601.1, more than justifies the deregistration decision here. Plaintiffs have asserted no facts which even suggest an inference of arbitrary discrimination, *see McGowan, supra,* 366 U.S. at 426, 81 S.Ct. 1101; this third contention also rests on pillars of air.

■ The law in this Circuit is that a preliminary injunction will issue upon "the demonstration of probable success on the merits and irreparable harm if the relief is not granted," *414 Theater Corp. v. Murphy,* 499 F.2d 1155, 1159 (2d Cir. 1974), or plaintiff must raise sufficiently serious questions going to the merits to make them a fair ground for litigation and establish that the balance of hardship tips decidedly in his favor. *Gulf & Western v. Great Atlantic & Pacific Tea Co.,* 476 F.2d 687 (2d Cir. 1973). Plaintiffs have met neither yardstick. Accordingly, the motion for preliminary injunction must be denied.

■ Turning to defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, 3 plaintiffs, as the parties asserting jurisdiction, have the burden of proving all jurisdictional facts, *Trinanes v. Schulte,* 311 F. Supp. 812, 813 (S.D.N.Y.1970). Since jurisdiction over the action is invoked under 28 U.S.C. § 1331—federal question jurisdiction—plaintiffs must show that the alleged federal claims are substantial, i. e., not obviously frivolous. *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). "The requirement of substantiality does not refer to the value of the interests that are at stake but to whether there is any legal substance to the position the plaintiff is presenting." Wright-Miller-Cooper, *Federal Practice and Procedure;* Jurisdiction § 3564, at 426 (1975).

At the hearing on the preliminary injunction, plaintiffs were presented with the opportunity to offer evidentiary

proof buttressing the three contentions. They chose not to do so, instead deciding to rest their case on the constitutional assertions raised in the complaint. It is plain from the complaint that plaintiffs have been denied neither due process nor equal protection of the laws, and accordingly, their claims are devoid of merit. Defendant's motion to dismiss is granted.

So ordered.