ABE LYMAN, Plaintiff, *v.* BILLY ROSE EXPOSITION SPECTACLES, INC.,
Defendant.

Supreme Court, Trial Term, New York County, February 3, 1943.

*Manual Maxwell* for plaintiff.

*Arthur Garfield Hays* and *Oscar Stabiner* for defendant.

BERNSTEIN, J.  The plaintiff brought this action on his own behalf and as assignee of fourteen musicians who comprise his orchestra to recover damages for the alleged breach of an employment contract entered into between them and the defendant.  The contract provided for the rendition of orchestral music at a place known as Billy Rose's Barbary Coast at the New York World's Fair during the season of 1940.  The services were to commence during May, 1940, and to continue for the " run of the show," but they could be terminated by the employer upon two weeks' notice of its intention to close the show.  The show planned to be presented and actually presented for a few weeks was a high-class production that had theretofore been playing successfully for seventeen months at Billy Rose's Diamond Horseshoe in New York city, but it proved to be an utter failure at the Fair.  In consequence thereof the defendant gave the plaintiff the two weeks' notice provided for by the contract, and disbanded its players.  Upon the discontinuance of this Diamond Horseshoe production the defendant changed the policy of its Barbary Coast and continued to operate it during the remainder of the season as a popular-priced beer garden with incidental music and song.

After the discharge of the Lyman orchestra the plaintiff and his associate musicians asserted the claim that the term " run of the show " was intended to mean " run of the Barbary Coast at the Fair " and, thus, that they had been wrongfully discharged.  When the defendant resisted this claim, they submitted the dispute to Associated Musicians of Greater New York, Local 802, of which they were members, as by its by-laws they were obligated to do, and from that point on the local assumed the task of adjustment.  After hearings before its executive board the local decided the controversy in favor of the Lyman orchestra, and the defendant undertook to appeal its decisions to the American Federation of Musicians, the local's parent

body. Meanwhile the local demanded that the defendant deposit with it weekly during the remainder of the Fair season the equivalent of the orchestra's aggregate weekly salaries, to be held in escrow pending the final determination of the contro-versy. The defendant declined to accede to the demand but, faced with a threat that its enterprises, including the World's Fair Aquacade, would be placed on the " unfair list," it finally offered to make an escrow deposit with the local of the round sum of $10,000. On June 12, 1940, it sent its certified check for that amount to the union. That check bore the endorsement " to be held in escrow to guarantee all amounts legally due to musicians from any Billy Rose enterprise at the N. Y. World's Fair, season of 1940," and was accompanied by a letter from defendant's president which quoted the endorsed text and added, amongst other things: " It is agreed at the end of the season you will return my deposit to me in the event that you agree that I have lived up to my contracts with musicians in every respect. In the event there is any disagreement between us, you will be entitled to withhold any amount in dispute until it has been legally determined whether or not any of said amount is due to any of your musicians or whether it should be repaid to me." On June 15, 1940, the local acknowledged receipt of the check, but stated its understanding of the conditions of the deposit somewhat differently: " The certified check of $10,000 * * * has been forwarded by you to us as a guarantee that in the event that the International Executive Board of the American Federation of Musicians should decide in favor of Mr. Lyman on the appeal, that said sum of $10,000 shall be available to Mr. Lyman for payment of such damages as the International Executive Board may determine he is entitled to. * * * It is upon the understanding that your letter accompanying the certified check confirms the foregoing that we have deposited your check and are holding the proceeds in escrow." On June 17, 1940, Mr. Arthur Garfield Hays of defendant's counsel wrote to the local on behalf of his client demurring to its version of the conditions of the deposit and stating, amongst other things: " It is Mr. Rose's understanding that this money is deposited with your Union as security to guarantee all contracts of any of his enterprises. * * * In connection with the Lyman matter, if the executive board decides that Mr. Rose is wrong, he is quite willing to have the matter determined by court procedure or by arbitration, and in the meantime to leave the security with you." Nothing more was said on the subject of the deposit but the check was retained and cashed by the local, and the Billy Rose enter-

prises at the Fair ended their season with all obligations to other musicians fully liquidated.

After the close of the Fair, Billy Rose's Exposition Spectacles, Inc., demanded that, since the season had ended and it had lived up to its contracts with musicians, the local return its $10,000 in accordance with the conditions of the deposit and, upon its refusal to do so, instituted an action against it in this court for the recovery of the money. Its complaint set up one cause of action based on the agreement of the local to return the deposit after the close of the season and a showing that there were no outstanding unpaid obligations to musicians, and a second cause of action for money had and received. It detailed its contract with Lyman and his orchestra and alleged that it had fully performed that contract and owed them nothing. The defendant local's answer to that complaint was a general denial. The action was tried by the court without a jury and resulted in a judgment for Billy Rose's Exposition Spectacles, Inc., in the sum of $10,000 and interest, and said judgment was subsequently paid. No opinion accompanied the award of judgment. Thereupon Lyman, acting for himself and his orchestra, brought this action for the breach of his contract.

In this action the defendant Billy Rose's Exposition Spectacles, Inc., has, in addition to its denials, interposed a separate defense setting forth in substance all the facts bearing upon the litigation between itself and the local, as hereinabove recited, and concluding that the judgment rendered in that litigation was a final adjudication that it did not breach its contract with the plaintiff and his orchestra and that there is nothing due them. By order entered herein on December 24, 1942, this issue of *res judicata* raised by the separate defense was directed to be tried separately and in advance of the other issues, and it was so tried by this court.

A reading of the record of the trial in the action of Billy Rose's Exposition Spectacles, Inc., against the local indicates that there were two separate questions litigated there, to wit: (1) Were the conditions of the deposit of $10,000 with the local as claimed by Rose or as claimed by the local, and (2) if they were as claimed by Rose, did his corporation liquidate all its obligations to musicians, including those to Lyman and his orchestra? All the proof tendered upon the trial related to one or the other of those two questions. The judgment rendered for the plaintiff in that action necessarily connotes a finding in favor of Rose's contention on both questions.

Had the finding on the conditions of the deposit been as claimed by the local, namely, that the disposition of the money was to await a decision by the International Executive Board of the American Federation of Musicians upon Rose's appeal, then, since the board had not yet rendered a decision the action was premature and had to be dismissed. Resting upon its own version of the conditions of the deposit, the defendant local urged the dismissal of the action upon that ground throughout the trial. It urged it most strenuously in its briefs. At no stage of the trial was it claimed that the deposit had failed because of lack of a meeting of the minds of the parties. That was an afterthought that only suggested itself to the plaintiff's counsel after the submission of the defendant's brief for a dismissal upon the ground of prematurity. The court's refusal to dismiss upon that ground is a clear indication that it accepted the Rose version of the conditions of the deposit.

Having accepted that version, it became necessary for the court to determine whether the conditions of the deposit had been met. Had the season ended? Had Rose's corporation met all its obligations to musicians other than Lyman? Had it met all its obligations to Lyman and his orchestra? There was no issue with respect to the first two inquiries. The third was bitterly contested. It resolved itself into a deadly duel as to the meaning of the words "run of the show." The major part of the testimony was devoted to that question. Mr. Feinberg, for the local, stated that the whole question was whether "the show" referred to the place or whether it referred to the performance, and that was the reason the local was holding Rose's $10,000; and again, that his whole contention was that as long as Billy Rose ran the Barbary Coast, Lyman had a claim to be employed by him. To permit the Rose corporation to recover its $10,000, the court necessarily had to find from the proof that "run of the show" meant the run of the production it had brought over from its New York night club, that it had a right to dismiss Lyman and his orchestra when it did, and that it owed them no money. Those were the things that the court actually found, if its judgment is to be presumed as well-founded and free from error. (*People ex rel. Price* v. *Hayes,* 151 App. Div. 561, 566.)

The plaintiff in this action has raised the further point that he is not estopped by the adjudication in the other action because he was not a party or a privy thereto. The facts, however, do not support his contention. As a member of the union he was bound to the observance of its by-laws. Those by-laws pro-

hibited him from resorting to any " action at law or in equity * * * against any employer * * * before exhausting all the remedies provided by the constitution and by-laws of this local or the constitution and by-laws of the American Federation of Musicians." (Art. IV, § 1.) The executive board of the local was vested with the power and authority of demanding and receiving from an employer of a member and of holding in escrow to insure payment to such member all moneys that may be or may become due to him, and even to render judgment against the employer of the member for unpaid services. (Art. I, § 7.) The plaintiff resorted to the remedies thus provided for him and submitted himself to the local's jurisdiction. The local thereupon took all the necessary steps to protect his claim, including the demand and acceptance of the deposit from Rose. It defended the action for the return of the deposit with the plaintiff's full knowledge and tacit consent. As his agent and representative, it contested in that action the plaintiff's right to recover for a breach of his employment contract upon the identical grounds asserted by him here. The plaintiff's personal attorney sat in upon the trial, although he did not participate therein. Had the decision been in favor of the local, the plaintiff would have received the full proceeds of the deposit. All those facts establish his privity with the local in respect to the former litigation for, as used in connection with the estoppel of a judgment, privity merely denotes mutual or successive relationship to the same right of property. (*Bigelow* v. *Old Dominion Copper Co.*, 225 U. S. 111, 128; *Wolf* v. *Kenyon*, 242 App. Div. 116, 117.)

The issue presented in the prior action was whether or not Rose had breached the contract with Lyman. It involved the interpretation of the words " run of the show." The same issue, involving the same interpretation, is presented in this action. The decisive test of *res judicata* is whether the rights or interests established in the first action will be destroyed or impaired by a different judgment in the second. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 308.) Judged by that test it is evident that the issue sought to be tried here is *res judicata* and, consequently, that the defense interposed is a good and sufficient defense and a bar to the maintenance of the action.

Settle findings accordingly.