EXPERT ELECTRIC, INC., Hendrix Electric, Inc., Argano Electric Corp., Zip Electric Co., Inc., Eugene Iovine, Inc., Phase II Electric Corp., Tap Electrical Services and Contracting, Inc., Raymor Electric Corp., Russell H. Vensk, Inc., Bisantz Electric Co., Inc., Robert E. Burden Electrical Contractor, Inc., and Five Star Electric Corp., Plaintiffs-Appellants,

v.

Louis L. LEVINE, Individually and as Industrial Commissioner of the State of New York, Defendant-Appellee.

Nos. 794, 964, Dockets 75–7462, 76–7560.

United States Court of Appeals, Second Circuit.

Argued Feb. 24, 1977.

Decided May 12, 1977.

Before MANSFIELD, VAN GRAAFEI-LAND, Circuit Judges, and MISHLER, District Judge.[*]

MISHLER, District Judge:

This is a consolidated appeal from two orders entered by the District Court for the Southern District of New York, Robert L. Carter, *District Judge*, the first dated July 24, 1975, *see Expert Electric, Inc., et al. v. Levine*, 399 F.Supp. 893 (S.D.N.Y.1975), and the second, November 5, 1976, both dismissing appellants' complaint. Appellants, by order to show cause, commenced an action seeking to enjoin the Industrial Commissioner from deregistering their master apprenticeship training program, and from disqualifying all participants from registering new programs in their individual capacities for three years.

Appellants are electrical contracting firms and members of United Construction Contractors Association, Inc. ("United"), a New York membership corporation established to jointly represent its employer participants in all phases of labor negotiations with Local 363, International Brotherhood of Teamsters ("Local 363"). On October 19, 1971, United and Local 363 executed a master agreement which outlined a program for the training of apprentice electricians. The contract called for a five year apprenticeship term during which apprentices were to receive on-the-job training in a schedule of trade processes and 144 hours per year of related classroom instruction. The agreement also recited minimum wage scales and prescribed maximum journeyman/apprentice ratios. A Joint Apprenticeship Committee ("JAC"), comprised of United and Local 363 officials, was formed to sponsor the program and administer its terms. On December 1, 1971, the master agreement was filed with, and registered by, the Apprentice Training Section of the New York State Department of Labor pur-

N. George Turchin, Morris Weissberg, New York City, for appellants.

Dominick J. Tuminaro, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., New York City, of counsel), for appellee.

[*] Of the United States District Court for the Eastern District of New York, sitting by designation.

suant to section 220(3-c) and 811(1)(d) of the Labor Law.

In 1973, a complaint was filed[1] with the Labor Department charging the JAC and various employer participants with violating the terms of the master apprenticeship training agreement and applicable state regulations. Labor Department officials met informally with JAC representatives in June of that year to discuss the recited deficiencies in recruiting methods and the supplementary in-class educational program. However, when no remedial steps were taken by sponsoring officials, a formal investigation was commenced. On June 17, 1974, the Industrial Commissioner issued a notice of proposed deregistration and caused it to be served on the named parties, i. e., United, Local 363 and the JAC, see 12 N.Y.C.R.R. §§ 601.7(b) and (c).[2]

The state charged that the JAC, even after notification of the program's shortcomings, failed to take any corrective action, thus rendering it impossible for any apprentice to successfully complete all phases of training. In addition, several employer participants, only one of whom is an appellant herein,[3] were cited for employing unregistered apprentices, utilizing trainees in numbers exceeding the prescribed journeyman/apprentice ratio, or failing to pay prevailing wage rates and supplements. A copy of the deregistration notice was served on all participating employers, whether or not they were charged with a particular violation.

At the request of United, Local 363, and sponsor JAC, see 12 N.Y.C.R.R. § 601.-7(c)(2), hearings were conducted on the alleged violations by the Apprenticeship and

---

1. The record does not reveal the identity of the party complaining.

2. Title 12 N.Y.C.R.R. § 601.7 provides in pertinent part:

 Voluntary and formal deregistration of registered programs. Deregistration of a program may be effected by (a) the voluntary action of the registrant requesting, in writing, the cancellation of the registration, or (b) by the commissioner instituting formal deregistration proceedings in accordance with the provisions of this Part.

 . . . . .

 (b) *Formal deregistration.* The commissioner may deregister any apprenticeship training program if he finds that the registrant, sponsor, or any participating sponsor has:
 (1) Violated a Federal or State law;
 (2) Subverted the program intent by hiring workers as helpers, shop boys or other titles and assigning to them work generally performed by apprentices;
 (3) Not conducted, operated, and administered the program in accordance with the intent of article 23, or the registered provisions, or the requirements of this Part, except that deregistration proceedings for violation of equal opportunity requirements shall be processed in accordance with the provisions of Part 600 of Title 12 of the Official Compilation of Codes, Rules and Regulations of the State of New York; or
 (4) Made a false or misleading statement in connection with the registration of the program, or is not a person of good character and responsibility.
 (c) *Procedure for formal deregistration.*

 (1) Where it appears that sufficient cause exists for deregistration, the commissioner shall send a notice to the registrant by registered or certified mail, return receipt requested, stating the following:
 (i) The notice is sent pursuant to this section;
 (ii) The ground or grounds on which it is proposed to deregister the apprenticeship training program; and
 (iii) That the program will be deregistered unless, with 10 calendar days of the receipt of this notice, the registrant files with the commissioner a written request for a hearing.
 (2) If the registrant requests a hearing, the commissioner shall convene a hearing and issue his determination in accordance with section 601.9 of this Part.
 (3) In such determination, the commissioner may allow the registrant a reasonable time to achieve voluntary corrective action.
 (4) In each case in which deregistration is ordered, the commissioner shall publish promptly in newspapers of general circulation a notice of the order and shall notify the registrant. In addition, the commissioner shall promptly notify all registered apprentices of the deregistration of the program; the effective date thereof; that such cancellation automatically deprives the apprentice of his individual registration; and that the deregistration removes the apprentice from coverage for State purposes.
 1198 LB 1–31–76.

3. Appellant Eugene Iovine, Inc. was charged with failing to use apprentices in the proper ratio and underpayments in the amount of $1,443.60.

Training Council, a panel of building contractors and union officials, see N.Y.C.R.R. § 601.9. On May 1, 1975, the Industrial Commissioner issued his opinion adopting the recommendations of the hearing panel and finding that:

(1) since the inception of the program in 1961, not one of the 574 apprentices registered, successfully achieved certifiable journeyman status; that

(2) the sponsor, JAC, failed to assure that the required in-class instruction was provided rendering it impossible for any apprentice to complete the supplemental educational phase; that

(3) the sponsor, since partially composed of employer representatives, was responsible for the wrongful acts of participating contractors; and that

(4) the sponsor, despite having knowledge of program's deficiencies, and agreeing to take corrective action, failed to follow a remedial course.

In conjunction, appellee entered an order directing ". . . that the Apprenticeship Training Program of the United Construction Contractors Association, Inc. and Local #363 International Brotherhood of Teamsters, Joint Apprenticeship Committee is hereby deregistered, effective immediately." The order contained no express reference to the operability of 12 N.Y.C.R.R. § 601.8 which in essence contemplates that employer participants in a deregistered program be disqualified from registering new programs in their individual capacities for a period not to exceed three years.[4]

On May 22, 1975, appellants filed a three-count complaint in the District Court for the Southern District of New York seeking to enjoin the program's deregistration and their disqualification from reinstatement. Firstly, the contractors attacked the facial validity of regulation sections 601.7(c) and 601.8, 12 N.Y.C.R.R. §§ 601.7(c) and 601.8, promulgated by the Industrial Commissioner. Appellants argued they could not, con-

sistent with the due process clause, be summarily subjected to deregistration and automatic disqualification from re-registering new programs solely because of the misdeeds of others. Their inability to employ apprentices in the absence of a registered training program, appellants argued, foreclosed all opportunity to successfully bid on federal, state, and local contracts. The demands of due process, the litigants claimed, required proof that they knew of, participated in or ratified the wrongful acts before they could be deprived of a valuable property right. Secondly, appellants alleged that the state's failure to prosecute its competitor, Local 3, International Brotherhood of Teamsters, for similar violations constituted a denial of equal protection. In the last count, premised under 42 U.S.C. § 1983, appellants sought damages for the alleged loss of bidding opportunities.

While this federal court action was pending, United brought an Article 78 proceeding in the New York State Supreme Court, Appellate Division, challenging the sufficiency of the Industrial Commissioner's findings. Petitioner argued that there was no evidentiary basis to support appellee's order. Moreover, United claimed, since the promulgation of the deregistration provision, 12 N.Y.C.R.R. § 601.7(c), was without statutory authority, the Industrial Commissioner's implementation of the regulatory scheme and consequent order of deregistration served to deprive petitioner of its right to due process of law. United also asserted an equal protection claim arguing that the Industrial Commissioner's decision not to proceed against Local 3 was constitutionally unsound.

Judge Carter acted first. In a memorandum of decision and order entered on July 24, 1975, the court rejected appellants' principal due process claim. The court held that appellants, having enjoyed the benefits of the program through their membership

---

4. Title 12 N.Y.C.R.R. § 601.8 provides:

"Reinstatement of program registration. Any apprenticeship program formally deregistered pursuant to this Part may not be reinstated for a period not to exceed three years, nor shall the sponsor or any employer or union participant be eligible to register any apprenticeship training program under any other name for such period."

**1232**

in the signatory associations, could not be heard to object when the state terminated these benefits because of successive violations by the signatories. These contractors were voluntary, not unwitting, participants in the program. When the JAC, as agent for the employer participants, signed the agreement and pledged to adequately train new apprentices, the court held, all participants were bound by the statutory and regulatory proscriptions that circumscribed the training scheme. Appellants' equal protection claim was found to be without merit. No evidence was offered to support the firms' contention that others guilty of similar violations were not subjected to deregistration proceedings.

After filing a notice of appeal, appellants sought leave from this court to apply to Judge Carter for an order vacating his judgment and granting a rehearing on their motion for a preliminary injunction. The requested relief was afforded by both courts. After entertaining oral argument, the district court issued a stay pending determination of the matter before the Appellate Division.

On June 3, 1976, the Appellate Division rendered its decision affirming the Industrial Commissioner's order of deregistration. *In the Matter of United Construction Contractors Association, Inc., et al. v. Louis Levine,* 52 A.D.2d 371, 384 N.Y.S.2d 509 (3d Dep't 1976). The court noted that Article 23 of the Labor Law, Labor Law §§ 811 *et seq.* (McKinney's 1965), vested the Industrial Commissioner with broad authority in the supervision of apprenticeship programs. Effective administration of apprenticeship training, the court reasoned, demanded that the state be empowered to deregister any program which was operated in violation of established rules and regulations. The mere fact that no specific statute authorized the promulgation of a deregistration scheme was of little import. The plan embodied in 12 N.Y.C.R.R. § 601.7(c), which envisioned notice, an opportunity to be heard, a decision, and supporting reasons, the court concluded, had a reasonable basis in law and satisfied the requirements of the due process clause.

The evidence, the court pointed out, indicated that not one of the more than 570 registered apprentices successfully completed all phases of training since the inception of the program. The court found that such evidence provided a sound basis for appellee to conclude that the sponsor failed in its supervisory obligations. United could not disassociate itself from the wrongful conduct of the employer participants; it was the JAC's duty to ensure the accomplishment of the program's aim and objectives. Deregistration, the court declared, was not an overly harsh penalty when the sponsor failed so grossly at its task. United's equal protection claim was succinctly rejected as without evidentiary foundation. Leave to appeal to the Court of Appeals was denied.

Thereafter, appellee Levine sought to renew his motion in the district court for dismissal on the pleadings, and in the alternative, for summary judgment, on the ground that the Appellate Division's determination was res judicata. On November 5, 1976, the district court issued a memorandum of decision and order dismissing the complaint. It was the court's position that insofar as United and the JAC were acting on behalf of appellants' interests, the requirements of the due process clause were satisfied when the associations were served with notice and subsequently appeared at the hearings. Appellants' substantive due process and equal protection claims were rejected on res judicata grounds. The contractors appeal from this, as well as the court's earlier ruling of July 24, 1975.

■ Spurred by considerations of judicial economy, and a public policy that favored injecting certainty into the legal system, the doctrine of res judicata, judicial in origin, was established for the primary purpose of avoiding repetitive litigation of the same causes of action. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1933). Briefly stated, the parties to an action in which a judgment on the merits has been rendered, or their privies, are barred from relitigating the same cause of action in a

second proceeding. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); *McNellis v. First Federal Savings and Loan Association of Rochester, New York*, 364 F.2d 251, 254 (2d Cir.), *cert. denied*, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966); *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968). There must be both an identity of parties and an identity of issues between the prior and subsequent suits before operation of the res judicata doctrine is triggered. Where a subsequent suit is based on a different cause of action, the principle of collateral estoppel renders the prior judgment conclusive only as to matters necessarily litigated and determined in the prior proceeding. *Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897); *Commissioner of Internal Revenue v. Sunnen, supra*, 333 U.S. at 597–98, 68 S.Ct. at 719; *McNellis v. First Federal Savings and Loan Association of Rochester, New York, supra*, at 254.

 The threshold requirement of identity of parties, qualified by the doctrine of privity, finds its roots in the ancient notion, now supplemented by the due process clause, that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard. Whether such identity is evident is a factual determination of substance, not mere form. *Astron Industrial Associates, Inc. v. Chrysler Motor Corp.*, 405 F.2d 958, 961 (5th Cir. 1968); *Aerojet General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation. *Aerojet General Corp. v. Askew, supra* at 719; *Roode v. Michaelian*, 373 F.Supp. 53, 55 (S.D.N.Y.1974). While often justified by the doctrine of privity, the theory underlying this general proposition is that the party bound is in substance the one whose interests were at stake in the prior litigation. Therefore, we need first examine, in order to determine whether there was an identity of parties between the state and federal court actions, the degree of representative authority vested in the sponsor JAC to administer the terms of the program.

Unfortunately, the brief one page form master agreement provides a skimpy basis from which to discern the extent of responsibility vested in the Committee. However, an inspection of the regulatory scheme, 12 N.Y.C.R.R. §§ 601.1 *et seq.*, expressly confirms that the sponsor, JAC, is fully accountable for the conduct of the program. The sponsor is recognized as the single representative of all participants, *see* 12 N.Y.C.R.R. § 601.3(e). As such, it is obligated to perform all administrative functions, *see* 12 N.Y.C.R.R. §§ 601.5(b)(6), (11), (12), (14), (15), (16) and (19), to assure the participants' compliance with all occupational health and safety standards, *see* 12 N.Y.C.R.R. § 601.5(b)(8), and foremost, to guarantee ". . . that the program will be conducted, operated, and administered in conformity with all applicable provisions." 12 N.Y.C.R.R. § 601.5(b)(8). In short, it is apparent from the face of the regulations themselves that the JAC is the employer participants' conduit to the overseeing agency, and the body vested with representative authority over the training program's operation. *See Kersh Lake Drainage District v. Johnson*, 309 U.S. 485, 491, 60 S.Ct. 640, 644, 84 L.Ed. 881 (1940).

Whether in their representative capacities the Committee and trade associations can be said to have had foremost in mind the interests of participating contractors during their appearance before the hearing panel and the Appellate Division remains to be determined. United, as a multi-employer unit, was presumably formed with an eye towards securing a more advantageous position for each participating contractor during labor negotiations and contract administration. Not only was increased bargaining power brought to the table, but the threat of favoritism and the concomitant competitive advantage one employer may gather was undercut, *see gen. A. Cox and D. Bok*,

*Labor Law* at 335 (7th ed. 1969); *Publishers Association of New York City v. National Labor Relations Board,* 364 F.2d 293 (2d Cir. 1966). Similarly, the Joint Apprenticeship Committee was formed to rid the individual participants of the administrative burdens that accompany the training program while garnering for each participant the cost advantage of apprentice labor. Insofar as the association had any interests in avoiding deregistration, they were the collective interests of the individual participants. Moreover, this is not a case where either the associations or any of the individual contractors were subject to potential criminal liability, *see e. g., United States v. Sherpix, Inc.,* 168 U.S.App.D.C. 121, 512 F.2d 1361 (1975). The only interests United and the JAC had to protect through the administrative and judicial process were those of the participating contractors. We conclude, therefore, that there is identity of parties. *Chicago R, I & P Railway Co. v. Schendel,* 270 U.S. 611, 618, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1927); *Kersh Lake Drainage District v. Johnson, supra* 309 U.S. at 491, 60 S.Ct. at 644; *Aluminum Company of America v. Admiral Merchants Motor Freight, Inc.,* 486 F.2d 717, 720–71 (7th Cir.) *cert. denied,* 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973); *Aerojet General Corp. v. Askew, supra* at 719.

▮ Privity aside, before res judicata can attach and conclusive effect be given the Appellate Division determination, it must be found that the causes of action raised in the state and subsequent federal actions, and the nucleus of facts which underlay them, were identical. *Commissioner of Internal Revenue v. Sunnen, supra* 333 U.S. at 597, 68 S.Ct. at 719; *Pan American World Airways, Inc. v. Civil Aeronautics Board,* 380 F.2d 770, 776 (2d Cir. 1967), *aff'd sub nom. World Airways, Inc. v. Pan American World Airways, Inc.,* 391 U.S. 461, 88 S.Ct. 1715, 20 L.Ed.2d 748 (1968). While often cast in terms of "identity of issues," the determination as to whether claims are duplicative is not a matter of precision, nor subject to the application of any mechanical formula.

▮ As it is, the applicable test has been variously stated by this and other New York courts; whether a different judgment in the subsequent action would impair the rights created pursuant to the judgment rendered in the prior action, *Moreno v. Marbil Productions, Inc.,* 296 F.2d 543, 545 (2d Cir. 1961), *citing Schuylkill Fuel Corp. v. Nieberg Realty Corp.,* 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929); whether the evidentiary basis of the first and second actions is the same, *United States v. Haytian Republic,* 154 U.S. 118, 125, 14 S.Ct. 992, 994, 38 L.Ed. 930 (1894); or whether the essential facts and issues were similarly presented in both cases, *Smith v. Kilpatrick,* 305 N.Y. 66, 70–71, 111 N.E.2d 209, 211–12 (1953), *see gen. Herendeen v. Champion International Corp.,* 525 F.2d 130, 132 (2d Cir. 1975); *McNellis v. First Federal Savings and Loan Association of Rochester, New York, supra.*

▮ The crucial element underlying all of these standards is the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies. *Mathews v. New York Racing Association, Inc.,* 193 F.Supp. 293, 294 (S.D.N.Y.1961). Herein, it is clear that the legal claims presented before the Appellate Division and the district court revolved around the operation of the apprenticeship program and the administrative proceeding that resulted in deregistration. Appellants, before the federal court, presented nothing in the way of evidence that was not before the state court panel. Their challenge concerned the same master training agreement, the same set of hearings, the same regulatory scheme, and the same administrative order of deregistration that were the subject of United's state court action.

By way of an Article 78 proceeding, the employer association sought to contest the sufficiency of the Industrial Commissioner's findings and the constitutionality of the regulation governing deregistration, 12 N.Y.C.R.R. § 601.7(c). In addition, United took issue with appellee's selective use of

enforcement powers claiming his failure to commence deregistration proceedings against Local 3 deprived petitioners of equal protection of the laws. The Appellate Division, after a close analysis of the deregistration scheme, held it had a reasonable basis in law and sustained its constitutionality. The evidence, the court found, was sufficient to support the Industrial Commissioner's order. Petitioner's equal protection claim, the court ruled, remained unsubstantiated.

▮ There is no doubt as to the identity of issue between the equal protection claim presented in the state and federal courts. Both the association and the individual contractors alleged that competing contracting firms involved in a master apprenticeship program with Local 3 were guilty of repeated contractual and regulatory violations, but were not subjected to deregistration proceedings by the state. The Appellate Division treated the claim fully rejecting it as without foundation. Their determination is dispositive. *Commissioner of Internal Revenue v. Sunnen, supra.*

▮ Moreover, appellants' challenge to the constitutional propriety of the regulatory scheme incorporated in § 601.7(c) and the deregistration order itself, but mirrored United's state court claim. Appellants' argument, in the context of their challenge to § 601.7, that they cannot be held liable for the misdeeds of others misses the mark. We agree that proof of either knowledge or ratification of an association's wrongful acts is crucial to the extension of additional personal liability to its members, *Phelps Dodge Refining Corp. v. Federal Trade Commission,* 139 F.2d 393, 396 (2d Cir. 1943); *Vandervelde v. Put & Call Brokers & Dealers Association,* 344 F.Supp. 118, 155–156 (S.D.N.Y.1972). But appellants' argument misconstrues the thrust and effect of the deregistration order. The subject apprenticeship program finds its derivation in a master training agreement executed by employer and labor associations on behalf of their respective members. This master agreement is to be distinguished from an individual training agreement between a given employer and apprentice. *See* Labor Law § 816 (McKinney's 1965). The Industrial Commissioner, in registering the program, contracted with United and the JAC, not the individual employers. It was the Committee that was recognized by, and answerable to, the state. Similarly, it was the United-Local 363–JAC program that was deregistered, and appellants, in their posture as members of United, are bound by the administrative order of deregistration and state court affirmance. *Hartford Empire Co. v. United States,* 323 U.S. 386, 405–06, 65 S.Ct. 373, 383, 89 L.Ed. 322 (1945); *Dunkel v. T. B. McDonald Construction Co.,* 67 N.Y.S.2d 515, 517 (Sup.Ct. 1946).

The terms of the Industrial Commissioner's order direct only discontinuance of the master program. The state withdrew a benefit upon the sponsor's failure to perform conditions that were part and parcel of the benefit conferred. Other than stripping all participants of their right to immediately employ apprentice electricians, the order imposes no additional restriction on any of the appellants. The suspension operates against the employer association and appellants only insofar as they are members. The state is neither seeking to hold these litigants accountable for the acts of others nor impose a penalty.

▮ That there was no evidence of appellants' wrongful involvement is irrelevant when they suffer injury only with relation to their status as members of United. The requirements of the due process clause are satisfied when association representatives are afforded notice and an opportunity to be heard. *Compare Dunkel v. T. B. McDonald Construction Co., supra.* There were no claims peculiar to appellants which required the opportunity to appear personally. *Kersh Lake Drainage District v. Johnson, supra,* 309 U.S. at 494, 60 S.Ct. at 646. Where the representative association has standing to assert the interests of its members, *see Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and is found to have adequately protected those interests, any determination rendered

against the association is binding on its members. There being identity of parties and issues between the Article 78 proceeding and the federal court action, the decision of the Appellate Division in the prior suit is res judicata as to the matters presented below.

The orders of July 24, 1975 and November 5, 1976 are affirmed.[5]

MANSFIELD, Circuit Judge (concurring):

I concur in Chief Judge Mishler's carefully considered opinion. I am satisfied that during the period of the suspension appellants are precluded from reregistering either as members of the JAC or in their individual capacities by 12 N.Y.C.R.R. § 601.8, which provides:

"nor shall the sponsor or any employer or union participant be eligible to register *any* apprenticeship training program *under any other name* for such period." (Emphasis supplied.)

Since appellants had actual notice of the deregistration proceedings and their authorized representative (who serves as their present counsel) actively participated in those proceedings on their behalf, there was no denial of due process in the application of the regulation.

---

**5.** Appellants' brief (p. 10) assumed a period of disqualification "for three years from June 2, 1976, namely, until June 2, 1979," based on a notice issued August 2, 1976 by Counsel's Office of the New York State Department of Labor. The record did not present the question as to the method of determining the period of disqualification under Section 601.8 of the Regulations Governing the Registration of Apprenticeship Programs and Agreements.