Abraham **GROSSMAN d/b/a Bruckner Nursing Home,** Plaintiff,

v.

David **AXELROD, M. D.,** Acting Commissioner of the State of New York Department of Health, Howard F. Miller, Acting Director of the Budget of the State of New York, and Barbara B. Blum, Commissioner of the State of New York Department of Social Services, Defendants.

No. 79 Civ. 338 (CHT).

United States District Court,
S. D. New York.

Feb. 26, 1979.

Marvin L. Tenzer, New York City, for plaintiff; Scott B. Lunin, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; Allan S. Moller, Asst. Atty. Gen., Paul R. Keitzman, Asst. Counsel, New York State Dept. of Social Services, of counsel.

## OPINION

TENNEY, District Judge.

Abraham Grossman d/b/a Bruckner Nursing Home ("Bruckner") commenced this action for declaratory and injunctive relief to prevent the defendants from recouping sums allegedly owed the New York State Medicaid Program because of a retroactive reduction in the 1976 reimbursement rate. On January 19, 1979, the Court ordered the defendants to show cause why an order should not be entered: (1) enjoining them from recouping the sums in question pending the determination of the action and (2) directing them to send notice to each city or county commissioner of social services in charge of such recoupment that they may not recoup the sums pending determination of the action. On January 25, the Court held a hearing on the application for the preliminary injunction. It subsequently found it unnecessary to hold a hearing on irreparable harm; for the purposes of this decision, the Court assumes that Grossman could show irreparable harm. For the reasons given below, the preliminary injunction is denied.

### Background

The State of New York participates in the joint federal-state Medicaid program, 42 U.S.C. § 1396 et seq., under which the state reimburses nursing home providers for services rendered to Medicaid recipients. Abraham Grossman owns and operates a provider, Bruckner, which is a 200-bed residential health care facility located in Bronx County. Grossman allocates all of Bruckner's 200 beds for Medicaid patients. Defendant David Axelrod, M.D., as Acting Commissioner of the State Department of Health, establishes and certifies the reimbursement rates for Bruckner's services to Medicaid patients. Defendant Howard F. Miller, as Acting Director of the State Budget, approves the reimbursement rates. Defendant Barbara B. Blum, as Commissioner of the State Department of Social Services, makes payments for services rendered to Medicaid patients.

By a letter dated October 27, 1978, the Department of Health informed Bruckner that the per diem reimbursement rate for 1979 had been established at $52.61. On

December 26, 1978, the Department notified Bruckner that a new rate had been established, superseding the October 27 rate. The new rate, $50.65, reflected a corrected inflation factor and an additional adjustment factor entitled "1976 recoupment." The rate computation sheet attached to the letter indicated that Bruckner had been over-reimbursed at an average rate of $1.96 per bed per day during 1976. This over-reimbursement represents the difference between the amount paid to Bruckner during the period from January 1 through October 31, 1976 and the amount it would have been paid at a lower rate set in October 1976 pursuant to 10 N.Y.C.R.R. part 86–2, made retroactive to January 1, 1976.[1] The difference amounts to $136,000, which the State Medicaid Program seeks to collect by reducing the 1979 reimbursement, thereby spreading the recoupment over many months.

Grossman alleges ten causes of action, and he has since indicated an intention to amend his Complaint with an equal protection claim. Grouped by types of legal attack, his various claims are as follows:

1. In his first cause of action, Grossman alleges that the defendants seek to recoup the overpayments without affording him a prior hearing. In his fourth cause of action, he claims that the recoupments constitute confiscation of property without just compensation, and he further contends that recoupment from Bruckner, a proprietary facility, will violate Grossman's equal protection rights because the defendants, in another case pending in the Southern District,[2] allegedly agreed to a stay of recoupment as to all nonprofit or public health facilities.

2. In the second and eighth causes of action, he claims lack of notice: in the former, he claims that he was not given the requisite 60-days notice prior to the effective date of his 1979 reimbursement rate, and in the latter he makes the same claim regarding his 1976 rate.

3. In the third cause of action, he claims that parts 86–2 and 88 failed to provide for reimbursement of Bruckner's reasonable costs and/or that the Commissioner of Health erroneously disallowed base-year costs in computing Bruckner's rates.

4. In the fifth, sixth, seventh, ninth, and tenth causes of action, he attacks the promulgation of parts 86–2 and 88 for various alleged deficiencies, i. e., that the Medical Advisory Committee was not consulted prior to their promulgation; that part 88 was enacted on an emergency basis without meeting the requirements of the state Administrative Procedure Act; that the Temporary President of the New York State Senate and the Speaker of the New York Assembly were not given 21-days notice, and the public was not given 21 days to comment, prior to the promulgation of part 86–2; that both parts effect retroactive reductions in rates established in October 1975—in violation of part 86; and, finally, that the regulations violate section 18 of chapter 76 of the Laws of 1976.

The defendants contend principally that this action should be disposed of under the doctrine of res judicata, invoking *Kaye v. Whalen*, 56 A.D.2d 111, 391 N.Y.S.2d 712 (3d Dep't 1977), *aff'd mem.*, 44 N.Y.2d 754, 405 N.Y.S.2d 682, 376 N.E.2d 1331, *appeal dismissed for want of a substantial federal question*, —— U.S. ——, 99 S.Ct. 303, 58

---

1. On October 31, 1975, the Department of Health published the reimbursement rate for Bruckner for January 1 through December 31, 1976. From January 1 through October 1976, Bruckner was reimbursed at that rate. During that period, however, the New York State Legislature enacted Chapter 76 of the Laws of 1976, which provided, *inter alia*, that the Commissioner of Health establish rates in accordance with Public Health Law §§ 2803(1)(c) & 2808. The Commissioner subsequently promulgated regulations that detailed the criteria by which reimbursement rates would be set, 10 N.Y.C.R.R. part 86, and in October 1976 established new rates under those regulations, retroactive to January 1, 1976. The new rate for Bruckner was lower than the rate at which it had been paid, resulting in Bruckner's owing the defendants the overpayment.

2. *New York Association of Homes for Aging, Inc. v. Blum*, No. 76 Civ. 5113 (TPG) (S.D.N.Y., filed Nov. 16, 1976). *See* discussion in text *infra*.

L.Ed.2d 315 (1978). They assert that Grossman is bound by that decision because he was in that case either a member of a named plaintiff association or a member of a class. The defendants alternatively contend that, even if res judicata is not applicable, *Kaye* disposes of most issues in this case under the doctrine of stare decisis, and that the remaining issues, if any, are questions of state law that should be addressed in a state forum.

Because of the central importance of *Kaye v. Whalen* in this action, it is necessary to set it out at some length. In *Kaye*, the Third Department of the New York State Supreme Court, Appellate Division, reversed a supreme court grant of an article 78 petition in which the petitioners (nursing homes and an association of such facilities) had sought to invalidate tentative rates set November 1975 for reimbursement in 1976 and to force the Commissioner of the Department of Health to set 1976 rates consistent with existing regulations. 56 A.D.2d at 113, 391 N.Y.S.2d at 714. The majority decided that newly enacted reimbursement standards in section 2808 of the Public Health Law gave the Commissioner sufficient statutory authority to continue the 1975 rates tentatively for 1976, as he did, and that doing so was better than to set new rates on the basis of regulations promulgated under a standard no longer in effect. The majority faulted the petitioners for failing to show that the tentative rate was inconsistent with the new standards. *Id.* at 114–15, 391 N.Y.S.2d at 714–15. They concluded that, in any event, the tentative rates were supplanted by the retroactive rates set in October 1976. They found that the retroactive effect was specifically authorized by section 2807(2)(e), found no impairment of contractual rights, found that approval by the Department of Health, Education and Welfare of the new rates and regulations was unnecessary, and, finally, found no vested rights of which petitioners had been deprived. *Id.* at 115–19, 391 N.Y.S.2d at 715–18.

The Court of Appeals of New York unanimously affirmed the appellate division. 44 N.Y.2d 754, 405 N.Y.S.2d 682, 376 N.E.2d 1331 (1978) (*mem.*). In so doing, it set out conclusions in conformity with those reached by the appellate division. That decision was appealed to the United States Supreme Court, which dismissed the appeal for want of a substantial federal question. —— U.S. ——, 99 S.Ct. 303, 58 L.Ed.2d 315 (1978).

### Discussion

 In the Second Circuit, a preliminary injunction may issue only upon "a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2d Cir. 1978); accord, *Selchow & Righter Co. v. McGraw-Hill Book Co.*, 580 F.2d 25, 27 (2d Cir. 1978). The Court assumes *arguendo* that Grossman could show a possibility of irreparable harm, but denies a preliminary injunction because he has failed to show either probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation.

### Res Judicata

 Created to save judicial time and to promote certainty in legal relations, res judicata stands as a bar to repetitive litigation on the same causes of action. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1232–33 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). After a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the rule binds the parties and their privies not only as to issues that were actually litigated, but also as to those that might have been raised but were not. *Sunnen, supra; Browning Debenture Holders' Committee v. DASA Corp.*, Nos. 1022, 1023, slip op. 4597, 4603, (2d Cir. Aug. 31, 1978); *Erbe v. Lin-*

coln Rochester Trust Co., 3 N.Y.2d 321, 327, 165 N.Y.S.2d 107, 112, 144 N.E. 2d 78 (1957);[3] Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 306–07, 165 N.E. 456 (1929). For the rule to apply, there must be an identity of parties and issues between the prior and subsequent suits, Expert Electric, supra, 554 F.2d at 1233; otherwise, the application of res judicata would violate the due process requirement that a person not be bound by a prior adjudication unless he has had reasonable notice of the claim and an opportunity to contest it. See Hansberry v. Lee, 311 U.S. 33, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 1B Moore's Federal Practice ¶ 0.411[1], at 1252 (2d ed. 1974).

## Substantial Identity of Interest

[6–8] The courts, however, have recognized several exceptions to the requirements of identity of parties, and these exceptions subject persons not formally parties to the prior adjudication to the binding force of res judicata. See generally Moore's, supra ¶ 0.411; Weinstein-Korn-Miller, New York Civil Practice ¶ 5011.32 (1977). One such exception applies where the party against whom res judicata is asserted has a substantial identity with a party in a prior litigation—where his interests were represented in the prior action. Chicago, Rock Island & Pacific Railway Co. v. Schendel, 270 U.S. 611, 618–22, 46 S.Ct. 420, 70 L.Ed. 757 (1926); Ellentuck v. Klein, 570 F.2d 414, 425–26 (2d Cir. 1978); Expert Electric, supra, 554 F.2d at 1233–34; Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir. 1975) (using the term "virtual representative"); Ashton v. City of Rochester, 133 N.Y. 187, 193, 30 N.E. 965, 31 N.E. 334 (1892); Weisz v. Levitt, 59 A.D.2d 1002,

1003, 399 N.Y.S.2d 720, 721 (3d Dep't 1977); Graham v. Board of Supervisors, 25 A.D.2d 250, 252, 269 N.Y.S.2d 477, 480 (4th Dep't 1966); Gable v. Raftery, 65 N.Y.S.2d 513, 518–19 (Sup.Ct.1945); Lyman v. Billy Rose Exposition Spectacles, Inc., 179 Misc. 512, 39 N.Y.S.2d 752 (Sup.Ct.1943), rev'd on other grounds, 267 App.Div. 532, 47 N.Y.S.2d 266 (1st Dep't 1944); New York State Railways v. Security Trust Co., 135 Misc. 456, 463, 238 N.Y.S. 354, 361 (Sup.Ct.1929), aff'd, 228 App.Div. 750, 238 N.Y.S. 887 (4th Dep't 1930). Whether there is a substantial identity is a matter of substance, not of form, Schendel, supra, 270 U.S. at 618, 620, 46 S.Ct. 420; Expert Electric, supra, 554 F.2d at 1233; that is, whether parties are nominally the same is not determinative of legal effect. Schendel, supra, 270 U.S. at 620, 46 S.Ct. 420. The essential consideration is that the interests of the person sought to be bound were at stake in the prior litigation. Schendel, supra, 270 U.S. at 618, 46 S.Ct. 420; Expert Electric, supra, 554 F.2d at 1233. Under Expert Electric, a court tests substantial identity by looking to the authority of the representative in the prior litigation and to the adequacy of the representation.

■ Here the defendants argue that Grossman is bound by Kaye v. Whalen because he was represented in that litigation by a named plaintiff, the New York State Health Facilities Association (the "Association"). That the Association was a named plaintiff in Kaye is established beyond doubt, Verified Petition ¶¶ 3–4, 8–9, attached as Exh. A to Supplementary Affidavit of Allan S. Moller, sworn to Feb. 6, 1979 ("Moller Supplementary Affidavit"), and

---

**3.** Whether the res judicata effect of Kaye v. Whalen, supra, on Grossman's claims should be determined under state or federal law is not entirely clear. Presumably, 28 U.S.C. § 1738 requires that Kaye be given the same effect it would in the State of New York, i. e., in accordance with New York law. See Winters v. Lavine, 574 F.2d 46, 54 (2d Cir. 1978); Mitchell v. National Broadcasting Co., 553 F.2d 265, 274 (2d Cir. 1977). Nevertheless, the Second Circuit applied federal law in recent cases addressing the effect of prior state adjudications on

persons not formally parties to the state actions. Ellentuck v. Klein, 570 F.2d 414, 425–26 (2d Cir. 1978); Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1232–33 (2d Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Expert Electric was decided just one month after National Broadcasting Co. Fortunately, the two sources of law yield the same result, sparing the Court the task of distinguishing those cases applying state law from those applying federal law.

Grossman concedes that he was a member of the Association in 1976, when *Kaye* was commenced. Affidavit of Abraham Grossman, sworn to Feb. 6, 1979, ¶ 2.

Moreover, the essential requirement that the interests of the person sought to be bound were at stake in the prior litigation is also met. The gravamen of *Kaye*, as decided, was that the recoupment is legal under both state and federal law; the gravamen of Grossman's Complaint challenges the same legality of the recoupment. Obviously Grossman's interests, like the interests of all Medicaid facilities, were litigated in *Kaye*. Of course, to the extent that Grossman presents new interests in this suit, he is not bound by *Kaye*. *See* discussion *infra*. It must be further acknowledged, and Grossman does not contend otherwise, that the representation in *Kaye* was adequate. The quality of the legal arguments, as may be inferred from the opinions of the supreme court and the appellate division, and the pursuit of the claims from the original article 78 proceeding up to the Jurisdictional Statement before the United States Supreme Court, indicate the adequacy of the legal representation.

However, Grossman seeks to distinguish *Expert Electric* and *Ellentuck*, which relies on *Expert Electric*, by arguing that he had never authorized the Association to pursue the litigation on his behalf. In *Expert Electric*, the Second Circuit faced the question of the degree of representative authority vested in a committee, formed by a union and a trade association, to administer an apprenticeship program. The court concluded that, despite a "skimpy" record, administrative regulations established that the committee was the conduit to the overseeing governmental agency and that it was the body with the authority over the program's operation. 554 F.2d at 1233. To ascertain whether the committee and the trade association were representing the members of the association in the prior litigation, the court looked to the purposes behind the committee and the trade association. The court concluded that the only interests represented were those of the members, those persons sought to be bound in the later action. The court decided that the association was presumably formed to further their collective interests and that the committee was formed to rid the members of an administrative burden and to secure cost advantages for each. *Id.* at 1233–34. In *Ellentuck, supra,* 570 F.2d at 425–26, the Second Circuit held that parties in that action were bound by their self-characterization as having been represented by an association in prior litigation.

Although a clearer statement of representative authority would be desirable, for the purpose of this application sufficient authority to bind Grossman can be inferred from the instant facts. First, as established above, Grossman was a member of the Association when *Kaye* was commenced. Secondly, he never sought to disassociate himself from the *Kaye* litigation.[4] Third, the Association characterizes itself as "a not-for-profit membership corporation . . . [whose] members . . . are 'nursing homes' and health-related facilities located in the State of New York . . . ." Verified Petition ¶¶ 3–4, attached as Exh. A to Moller Supplementary Affidavit. Presumably the Association's only interest was furthering the collective interests of its members. The *Kaye* litigation indicates that the Association was doing just that and, furthermore, that Grossman's interests lay squarely within the general ambit of interests pursued in *Kaye*. Finally, it should be noted that a contrary result would enable Grossman to relitigate the very rights previously adjudicated in *Kaye*—with the attendant expense in judicial time and the possibility of inconsistent results as to parties standing in the same position.

### Class Action

■ Class actions are another exception to the res judicata requirement that there

---

4. Grossman eventually left the Association. Although the time of his leaving and his reason for doing so are unclear, there is no suggestion that he left to disassociate himself with the *Kaye* litigation.

be an identity of parties. *See Hansberry v. Lee, supra.* The defendants argue that *Kaye v. Whalen* binds Grossman, if not on the basis of his membership in the Association, then in its posture as a class action. Grossman responds that *Kaye* does not bind him in this action because the New York Supreme Court Justice failed to certify *Kaye* as a class action or to describe the class as required by N.Y.C.P.L.R. art. 9.[5] He further contends that the supreme court's description of the class and its grant of class-wide relief in its decision, *see* Exh. B to Moller Supplementary Affidavit at 5, do not make *Kaye* a class action because the appellate division reversed the lower court's judgment, 56 A.D.2d at 119–20, 391 N.Y. S.2d at 718.

 It is true that because the appellate division dismissed the petition, it found it unnecessary to decide whether class relief, granted by the lower court, would have been appropriate. The defendants respond in turn, however, that in granting injunctive relief to the class pending appeal, the appellate division recognized petitioners' class status.

"The broad discretion given the court to determine whether the class action is maintainable and to direct the course of the proceedings is specifically aimed at protecting the rights of those members of the class who are not actually parties to the action." Weinstein-Korn-Miller, *supra* ¶ 5011.35. Because the protections—if not the label—afforded by New York's class action procedure have been accorded Grossman, it seems equitable that, when this action is addressed on the merits, he be bound as a member of the class as well as be bound as a member of the Association. First, *Kaye v. Whalen* was prosecuted as a class action from the New York State Supreme Court to the United States Supreme Court. As indicated in the Verified Petition ¶ 8, attached as Exh. A to Moller Supplementary Affidavit, petitioners and the Association brought the proceeding "on their own behalf and on behalf of all other similarly situated licensed nursing homes and health-related facilities within the State of New York which participate in the federal Medicaid program." *Accord*, Jurisdictional Statement at 2, attached as Exh. A to Affidavit of Allan S. Moller, sworn to Jan. 31, 1979 ("Moller Affidavit"). The reasons for bringing a class action are also set out. Verified Petition ¶¶ 9–10. Grossman was a member of that class. *See* Affidavit of Abraham Grossman, sworn to Jan. 19, 1979, ¶ 3, attached to Order to Show Cause, dated Jan. 19, 1979.

Second, the New York lower court considered the proceeding to be a class action. "Petitioners represent, as a class, all nursing homes and health related facilities in the State of New York participating in the Medicaid Program." Decision attached as Exh. B to Moller Supplementary Affidavit at 6. The court awarded relief "to the petitioners, and the members of the class," *id.* at 18, and the appellate division subsequently acknowledged that the lower court had granted class relief. 56 A.D.2d at 119–20, 391 N.Y.S.2d at 718.

Third, the appellate division twice granted class-wide injunctive relief: first, pend-

---

**5.** Grossman relies in part on *Citizens for Community Action at the Local Level, Inc. v. Ghezzi*, 386 F.Supp. 1 (W.D.N.Y.1974), *rev'd on other grounds*, 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977). In *Ghezzi*, a three-judge court rejected a res judicata defense, finding that none of the plaintiffs before it had authorized a party in a prior action to represent it or had consented to such representation. It further found that they could also not be bound as members of a class in the prior action because it was not brought pursuant to Federal Rule of Civil Procedure 23. Because the prior action had not been properly brought as a class proceeding, the first court was "not called upon to make [the] critical determinations under Rule 23," such as the adequacy of representation and notice. *Id.* at 6. In the instant action, however, it appears that Grossman gave implicit authority or consent to the Association to represent Bruckner regarding questions common to the collective membership. *See* text discussion *supra*. It also appears that *Kaye v. Whalen*, unlike the action prior to *Ghezzi*, was brought as a class action pursuant to the applicable law, in this case N.Y.C.P.L.R. art. 9, and that, *inter alia*, the supreme court was called upon to make and presumably did make the critical determinations appropriate to granting class-action status. *See* text discussion *supra*.

ing appeal to itself, Order dated Nov. 19, 1976, attached as Exh. D to Moller Supplementary Affidavit; *see* Affidavit of Cornelius D. Murray, sworn to Nov. 4, 1976, ¶¶ 3, 7, attached as Exh. C to Moller Supplementary Affidavit, and second, pending appeal to the Court of Appeals, Order dated Mar. 15, 1977, attached as part of Exh. F to Moller Supplementary Affidavit; *see* Affidavit of Cornelius D. Murray, Sworn to Feb. 17, 1977, ¶¶ 3, 5, 7, attached as part of Exh. F to Moller Supplementary Affidavit.

A fourth factor that bears on whether Grossman will be bound as a member of the class in *Kaye* is his failure to have sought exclusion from the class, as may be done under N.Y.C.P.L.R. § 903. He may be found to have had notice of the *Kaye* Petition because he was a member of the Association, a named party in *Kaye*.[6] To the Court's knowledge, Grossman never at any time sought to "opt out" of *Kaye* or to suggest any preference for seeking independent relief. Finally, as indicated above, Grossman's interests appeared to have been represented adequately by the named parties in *Kaye*.

*Remaining Claims*

 Under both the law of the Second Circuit and of the State of New York, the binding force of res judicata extends not only to issues actually raised and litigated, but also to issues that might have been raised but were not. *See* text *supra.* In determining what claims in the subsequent litigation will be precluded, courts in the Second Circuit look to the factual predicate of the claims asserted. *Expert Electric, supra,* 554 F.2d at 1234. In New York, "[t]he decisive test is . . . whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second." *Schuykill Fuel Corp., supra,* 250 N.Y. at 306–07, 165 N.E.2d at p. 458. Grossman argues that even if res judicata applies, and accordingly precludes issues that were or might have been litigated, four claims will remain: his equal protection claim and the first, second, and third causes of action.

In the equal protection claim, Grossman argues that the defendants have selectively decided, in the course of litigating *New York Association of Homes for Aging, Inc. v. Blum,* No. 76 Civ. 5113 (TPG) (S.D.N.Y., filed Nov. 16, 1976), to recoup the 1976 overpayments from Bruckner, a proprietary home, while at the same time agreeing not to recoup such sums from nonprofit or public health facilities. Defendants deny that they ever consented to staying the recoupment from nonprofit or public homes. While this claim would not be barred by res judicata, the Court concludes that whether the defendants did or did not so consent, Grossman's claim is fragile. In both this action and the action before Judge Griesa, defendants are actively pursuing their right to recoup the 1976 overpayments. A temporary stay of recoupment as to some facilities, even if consented to, was under the pressure of litigation and not in any true sense voluntary.

In Grossman's first cause of action, he claims that his due process rights were violated when the defendants, allegedly without affording Grossman the opportunity of a prior hearing, sought to recoup the 1976 overpayments from the 1979 reimbursements. Contrary to Grossman's contention, this cause of action will indeed be barred by res judicata. Grossman frames the alleged deprivation as of 1979, but the right to recoup, upheld in *Kaye v. Whalen,* dates back to late 1976. The right to prior notice, to the extent that it was not actually litigated in *Kaye,* could have been raised in that litigation. Additionally, were Grossman entitled to a hearing, it would not have to be a pre-recoupment hearing. *Clove Lakes Nursing Home v. Whalen,* 45 N.Y.2d 873, 410 N.Y.S.2d 804, 383 N.E.2d 106 (1978) (per curiam).

---

**6.** Notice is not required, however, in actions brought primarily for declaratory or injunctive relief. N.Y.C.P.L.R. § 904(a).

■ In Grossman's second cause of action, he claims that the defendants failed to give him the required 60-day notice before the effective date of the 1979 reimbursement rate. He concedes that he was notified of a 1979 reimbursement date as early as October 1978, but he alleges that the Department of Health established a new rate in late December. In the Department's letter advising Grossman of the change, it wrote that the December "rate supercedes [sic] the rate transmitted in our letter of October 27, 1978. It is an all inclusive rate for services provided by your facility." Letter from Chester E. Burrell, Asst. Director, Division of Health Care Financing, dated Dec. 22, 1978, at 1, attached as Exh. A to Order to Show Cause. The new "rate" contained both a "corrected three-year roll factor containing revised trend factors for 1977 and 1978" and a recoupment adjustment. *Id.* The defendants contend that the December figure was not a new rate in a sense that would require additional notice, but was merely a statement of what would be paid during 1979, *i. e.*, the 1979 rate minus a recoupment of the 1976 overpayment. Whether the adjusting factors establish a new rate or merely reduce an existing one is unclear. The answer should, however, not rest on semantics. It should, moreover, be decided by a state court. This Court must avoid needless conflict with New York's administration of its Medicaid system, particularly where the law is unclear, will affect the entire Medicaid facility industry, and is a matter of substantial state concern. *See Alabama Public Service Commission v. Southern Railway Co.*, 341 U.S. 341, 71 S.Ct. 775, 95

L.Ed. 1016 (1951); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (district court, in its discretion, may refuse to exercise its jurisdiction to avoid needless conflict with state policy, misunderstandings of local law, and delay in a state's program, and may do so to further the public interest); *Surowitz v. New York City Employees' Retirement System*, 376 F.Supp. 369 (S.D.N.Y.1974). Furthermore, because of the analysis of the federal claims in this action and, additionally, because of the predomination of the state claims, the Court, under the principles of pendent jurisdiction, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), will decline to address this state claim when this action is decided on the merits.

■ The above treatment applies with even greater force to Grossman's third cause of action in which he claims, somewhat unclearly, *see* Complaint ¶¶ 25–34, that the Commissioner of Health erroneously disallowed unspecified base year costs, and therefore fixed a reimbursement rate at less than Bruckner's reasonable costs. Whether Grossman is challenging the rate-making structure promulgated in 10 N.Y.C.R.R. parts 86–2 and 88, as defendants maintain, or merely Bruckner's reimbursement rate, as the rate structure was particularly applied to it, is unclear. Under either interpretation, the *Burford* abstention principles and the *United Mine Workers* pendent jurisdiction principles are apt, and the Court will decline to reach this cause of action when it addresses the action on the merits.[7]

7. Were res judicata not applicable, the Court would have dealt with most of the federal claims under the doctrine of stare decisis on the basis of the Supreme Court's dismissal of the appeal in *Kaye v. Whalen* for want of a substantial federal question. Such dismissals are decisions on the merits, *Hicks v. Miranda*, 422 U.S. 332, 343–46, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); they decide, however, only the precise issues presented in the jurisdictional statements. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238 53 L.Ed.2d 199 (1977); *see McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam). The first and second

questions in the *Kaye* Jurisdictional Statement addressed, *inter alia*, the state's alleged abandonment of "the federally required reasonable cost-related reimbursement system." Jurisdictional Statement at 5, attached as Exh. A to Moller Affidavit. This question covers, and would thereby dispose of, Grossman's third cause of action, at least to the extent that he is challenging 10 N.Y.C.R.R. parts 86–2 and 88 generally, and not their application to Bruckner specifically. The fourth question presented to the Supreme Court is whether the New York statute "retroactively reducing rates, unconstitutionally impaired Appellant's [sic] contractual rights and divested them of their property

# 780

## Conclusion

Having determined that Grossman has not raised serious questions going to the merits, the Court must deny his motion for a preliminary injunction. It appears that he will be bound on the merits by res judicata as to all of his causes of action except the second and the third, which are questions of state law better decided by a state court. Were res judicata not applicable, stare decisis would dictate that most of his federal claims be dismissed. What state law claims would survive the latter doctrine would be better decided by a state court. Finally, Grossman's equal protection claim appears to be without merit. Accordingly, the application for a preliminary injunction is denied.

So ordered.

without just compensation or due process of law." *Id.* at 6. This question directly parallels Grossman's fourth cause of action and may also dispose of his first due process argument—*i. e.*, that Bruckner has a property right in retaining reimbursements received and that this right cannot be deprived without comporting with procedural due process. *See* Memorandum at 8–11. Grossman argues that this question survives the Supreme Court's dismissal of *Kaye v. Whalen* because the Supreme Court was not confronted directly with the question whether Grossman was given adequate notice. Even if he is correct, this question will be disposed of on res judicata grounds. *See* text discussion *supra*. Accordingly, the Court declines to address the question on this application.